# IN THE COURT OF APPEALS OF IOWA

No. 17-0930
Filed August 16, 2017

**IN THE INTEREST OF K.W.,**
**Minor Child,**

**M.W., Mother**
  Appellant,

**J.A.-S., Father,**
  Appellant.
_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A mother and father separately appeal from the termination of their parental rights to their child.  **AFFIRMED ON BOTH APPEALS.**

Ryan R. Gravett of Oliver Gravett Law Firm, P.C., Windsor Heights, for appellant mother.

Richard R. Hollis, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Paul L. White of the Des Moines Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for the minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

A mother and father separately appeal from the termination of their parental rights to their child, K.W., born in September 2016. Both parents contend termination is not in the child's best interests and the juvenile court should have granted their requests for additional time to work toward reunification with their child. The father also argues the State failed to prove the statutory grounds for termination by clear and convincing evidence and an exception to termination exists so as to preclude termination.

The mother has a lengthy history of substance abuse. She admitted using methamphetamine during her pregnancy and K.W. tested positive for the drug at birth. The court removed K.W. from the parents' custody shortly after the child's birth and adjudicated K.W. a child in need of assistance (CINA) in October 2016. The mother minimized and denied her substance-abuse and mental-health issues throughout the CINA case. She struggled to find suitable housing and employment to be able to provide for her child's needs. In March 2017, the mother was arrested on an outstanding warrant and subsequently charged with possession of drug paraphernalia.

The father has an extensive criminal history and was incarcerated at the time of K.W.'s birth. The parents have never been married, but the mother identified the father as K.W.'s biological parent soon after the child's birth. The father was notified of the removal hearing in September 2016 and was present for the hearing by telephone. However, the father denied paternity and refused to participate in the court-ordered testing until the end of January 2017, because he did not want to be responsible for child-support payments. The father did not

request contact or visitation with the child until after he participated in paternity testing. He was confirmed the biological parent of K.W. in March 2017—six months after the child's birth. At the time of the termination hearing, the father had been approved for work release but had not yet been transferred to the work-release facility.

In a detailed and well-reasoned ruling, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) (2017) and the father's parental rights pursuant to section 232.116(1)(b) and (h). We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* at 219 (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

The father challenges the grounds for termination under paragraph (b) and also appears to challenge the grounds under paragraph (h) by claiming the Iowa Department of Human Services (DHS) failed to make reasonable efforts to reunify him with his child.[1] *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent [at the time of the termination hearing]."). When a court terminates parental rights on more than one ground,

---

[1] The mother does not challenge the statutory grounds for termination; therefore, we do not address this issue and affirm the termination of her parental rights under paragraph (h). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating that, when a parent does not challenge the existence of statutory grounds, we need not address the issue).

we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

The State must make reasonable efforts to reunify the family as quickly as possible after a child has been removed from his or her parents' care and custody. Iowa Code § 232.102(7). In determining whether reasonable efforts have been made, the court considers "[t]he type, duration, and intensity of services or support offered or provided to the child and the child's family." *Id.* § 232.102(10)(a)(1). "[T]he nature and extent of visitation is always controlled by the best interests of the child." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). When a parent is incarcerated, DHS must provide services "reasonable under the circumstances." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). In making this determination, DHS may consider the following factors: the child's age, the bond the child shares with the incarcerated parent, "any existing clinical or other recommendations concerning visitation," "the nature of parenting deficiencies," the physical location of the incarcerated parent relative to the child's placement, "the limitations of the place of confinement," the services available to the incarcerated parent in his or her current setting, the nature of the criminal offense, "and the length of the parent's sentence." *Id.*

After the father requested visitation, DHS considered the factors listed immediately above and determined visitation was not appropriate in this case due to the child's young age, the complete lack of a bond between the father and his child, the father's lack of experience in parenting young children, the great physical distance between the child's foster home and the prison where the father was located, the prison's visiting room was not conducive to holding visits

with very young children, the fact the father was in prison for drug-related offenses, and because the father's tentative discharge date was set for April 2020. Based upon this detailed report by DHS, the court did not order visitation between the father and the child following the hearing on the matter in April 2017, noting specifically "the child's developmental delays, mental, emotional and physical, as well as [the] recent change in caretakers, make a long distance trip to visit with the father harmful to the child." On our de novo review, we cannot say the denial of visitation to the father was unreasonable under the circumstances. We agree with the juvenile court's finding that reasonable efforts were made to reunify the father with his child and affirm the termination of the father's rights under paragraph (h).

Both parents argue termination is not in the child's best interests. In determining whether termination of a parent's parental rights is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (quoting *In re C.B.*, 611 N.W.2d at 495).

The mother did not address her substance-abuse or mental-health issues during the underlying CINA case. She was unemployed, did not have stable housing or reliable transportation, and was unable to meet her child's needs.

The mother never progressed beyond fully supervised visits. She was arrested in March 2017 on an outstanding warrant from December 2016 and charged with a drug-related offense for having a methamphetamine pipe on her person at the time of her arrest. At the time of the termination hearing, the mother was living with a friend who was not appropriate to be around the child. The father has been incarcerated for all of K.W.'s short life. The lack of a relationship between the father and his child is due to the father's incarceration and initial refusal to participate in paternity testing or request contact with the child. The child is in foster care with a distant relative who wishes to adopt the child. Based on this evidence, we find termination is in the child's best interests.

The father next contends Iowa Code section 232.116(3)(c) applies to save his relationship with his child. That section provides a court may decide not to terminate a parent's parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The father acknowledges he does not have a bond with his child at all, let alone a close one. Yet, he claims "the reason [he] has not been able to develop a close relationship with [the child] is because of the failure of the Department of Human Services to provide visitation services." We have already determined the denial of visitation was not unreasonable. We affirm the juvenile court's decision that section 232.116(3)(c) does not apply here.

Finally, both parents claim the juvenile court should have granted their requests for an additional six months to work toward reunification with their child. Under Iowa Code section 232.104(2)(b), a court may authorize a six-month

extension if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."

The mother concedes she has "significantly struggled and did not engage in all of the services to aide her in having her child place[d] back in her care." She further admits "she spent much of this case minimizing her and not understanding the extent of her substance abuse issues." Nevertheless, she claims that had the juvenile court granted her request for an additional six months, she could have entered a residential facility and the child could have been placed with her there. She did not have stable housing or employment throughout the CINA case. And even before the mother was jailed in March 2017, she never progressed beyond fully supervised visits. The father spent the first several months denying paternity of the child and refusing to participate in services to avoid paying child support for the child. At the time of the termination hearing, the father had been approved for work release but had not yet been transferred to the facility. He has a tentative discharge date of April 2020.

We must now view this case with a sense of urgency. *See In re C.B.*, 611 N.W.2d at 495; *see also In re A.B.*, 815 N.W.2d at 777 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010))). We cannot ask this child to continuously wait for the parents to become stable. *See In re D.W.*, 791 N.W.2d at 707; *see also In re A.B.*, 815 N.W.2d at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get

their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). On the record before us, we are not persuaded the need for removal would no longer exist at the end of six months. *See* Iowa Code § 232.104(2)(b).

Accordingly, upon our de novo review, we affirm the juvenile court's order terminating the mother's and the father's parental rights to their child.

**AFFIRMED ON BOTH APPEALS.**