**IN THE COURT OF APPEALS OF IOWA**

No. 18-1205
Filed September 26, 2018

**IN THE INTEREST OF A.S.,**
**Minor Child,**

**J.B., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Jefferson County, William S. Owens,

Associate Juvenile Judge.

　　A father appeals the juvenile court's termination of his parental rights.

**AFFIRMED.**

　　Larry J. Brock of Brock Law Office, Washington, for appellant mother.

　　Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

　　Patricia J. Lipski, Washington, guardian ad litem for minor child.

　　Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

A father appeals the juvenile court's termination of his parental rights. We find additional time to have the child placed in the father's care is not warranted and termination is in the child's best interests. We affirm the decision of the juvenile court.

## I. Background Facts & Proceedings

J.B., father, and J.S., mother, are the parents of A.S., born in 2015. A.S. resided with the mother. The Iowa Department of Human Services (DHS) provided A.S. with family services since birth.

A.S. was removed from the mother's care on March 6, 2017, after the mother tested positive for multiple controlled substances and admitted use of controlled substances to her probation officer. At the time of removal, the father was not involved in the life of A.S. and the mother had a no-contact order against the father. A.S. was placed with the maternal grandmother.

On May 3, the court adjudicated A.S. a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2017). In July, the placement of A.S. was transferred to a foster family.

From the time of A.S.'s removal, the father was arrested three times: twice for violating the no-contact order with the mother and once for violating his probation. Shortly after the removal, an incident of domestic violence occurred between the mother and the father, leading to the father's conviction. He was not in contact with DHS until June 2017. The father had weekly visits with A.S. from June until October, supervised by a Family Safety, Risk, and Permanency (FSRP) worker.

The father tested positive for controlled substances in October resulting in the revocation of his probation. While the father was in prison, he participated in available programming including Narcotics Anonymous, Alcoholics Anonymous, and parenting courses. The father's sentence length prevented him from entering substance-abuse treatment or taking domestic-abuse programming. Starting in February, after DHS approved the communication, he wrote letters to A.S. daily. Beginning in March, the father was permitted weekly telephone calls with A.S. and resumed visitation at the facility. He was still in prison at the time of the termination hearing.

On May 15, 2018, the State filed a petition to terminate the parents' rights. The father had told the FSRP worker in May he was considering signing over his rights to the foster parents, but he changed his mind at the hearing, requesting a continuance. At the termination hearing on June 27, the court heard testimony from the DHS worker, the mother, the FSRP worker, and the father. The DHS worker told the court of the progress the father had made in his treatment, that he has done everything he could do while in prison, and of the bond between J.B. and A.S. The DHS worker also noted the father had never been the sole caretaker of the child, had not demonstrated parenting expectations like providing meals or discipline, and had not had unsupervised visits. The FSRP worker testified to the bond between the father and the child, observations on their interactions, and discussed the classes and treatment sought by the father.

The father testified he was an Iraq War veteran with a diagnosis of post-traumatic stress disorder. After his anticipated discharge from prison, scheduled for a few weeks after the hearing, he planned to move to Des Moines to live with

his mother—a person he had not seen in several years and who suffered from mental-health issues, which the father thought would be detrimental to the child. He planned to utilize resources available to him as a veteran to obtain subsidized housing and employment. He had spoken with Veterans Affairs about substance-abuse and mental-health treatment but had to wait until he was released to proceed with any plans. He knew he could not take A.S. at the time of the hearing but asked that he be given an additional six months to show he could provide a place for A.S.

On July 5, the court terminated the father's parental rights to the child under Iowa Code section 232.116(1)(h) (2018).[1] The father appeals.

## II.      Standard of Review

The scope of review is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Clear and convincing evidence means there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The paramount concern in termination proceedings is the best interests of the child. *In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003).

## III.      Merits

The court terminated the father's parental rights to A.S. under Iowa Code section 232.116(1)(h). He has not contested the termination under section

---

[1]    The juvenile court also terminated the rights of J.S. under Iowa Code section 232.116(1)(h). J.S. does not appeal.

232.116(1)(h), and therefore he has waived this issue on appeal. *See* Iowa R. App. P. 6.903(2)(g)(3).

The father requests a six-month extension to work toward reunification with the child. To extend the permanency determination, the juvenile court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). While the law requires a "full measure of patience with troubled parents," that patience is part of the process of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). The patience afforded a parent can turn into an intolerable hardship for the children. *In re S.J.*, 620 N.W.2d 522, 526 (Iowa Ct. App. 2000). An extension is appropriate if the need for removal will no longer exist at the end of the extension. *See In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

The father was incarcerated at the time of the termination hearing for an incident of domestic abuse occurring after the removal and had yet to complete the term of his sentence. He had not undergone substance-abuse treatment or completed domestic-violence programming. The juvenile court noted the father's progress but concluded he would not become a suitable placement for A.S. within six months as required by statute. The court specifically listed his need to find substance-abuse, mental-health, and domestic-violence treatment; obtain employment; and locate safe housing—all in a community where he had never lived—in less than five months from his release.

A.S. has been removed from the mother for eighteen months and has never been in the father's care. The child has been placed with the foster family for over a year and is bonded with the foster parents, and the foster family wishes to adopt A.S. *See* Iowa Code § 232.116(2)(b) (allowing the court to consider integration into and willingness to permanently integrate child into foster family). As the father told the FSRP worker, A.S. needs and deserves a stable and permanent home, and the foster family offers the best opportunity for that. *See In re J.B.L.*, 844 N.W.2d 703, 706 (Iowa Ct. App. 2014). The father has made progress while in a controlled setting and appears to be making positive choices, but we cannot say he would be able to complete treatment and be able to provide a safe, stable, and permanent home for the child within six months of the termination hearing. Termination will enable the child to achieve permanency and is in A.S.'s best interests. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

For the above reasons, we affirm the decision of the juvenile court terminating the father's parental rights.

**AFFIRMED.**