# IN THE COURT OF APPEALS OF IOWA

No. 18-1661
Filed February 6, 2019

IN THE INTEREST OF E.G.,
Minor Child,

M.B., Mother,
    Appellant.
_____

    Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, District Associate Judge.

    The mother appeals the termination of her parental rights.  **AFFIRMED.**

    Amanda Heims, Council Bluffs, for appellant mother.

    Thomas J. Miller, Attorney General, and Anagha Dixit and John McCormally (until withdrawal), Assistant Attorneys General, for appellee State.

    Roberta J. Megel of State Public Defender's Office, Council Bluffs, guardian ad litem for minor child.

    Considered by Vogel, C.J., and Potterfield and Doyle, JJ.

**POTTERFIELD, Judge.**

The mother appeals the termination of her parental rights to her child, E.G., who was born in 2006.[1] The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2018). The mother maintains the statutory grounds for termination have not been met as the State failed to make reasonable efforts to reunify her with her child and the close bond she shares with E.G. precludes termination.

We review termination proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We begin by considering the statutory grounds. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *Id.* at 774. We consider the grounds of section 232.116(1)(f), which allows the court to terminate parental rights if all of the following are met:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother challenges the fourth element—whether E.G. could be returned to her care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing"). She asserts the State failed to make reasonable efforts to

---

[1] E.G.'s biological father is deceased.

reunify her with E.G. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [department of human services] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts.").

The State has the burden to show it made reasonable efforts "as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.* But to preserve this issue for our review, the mother "had the obligation to demand other, different or additional services prior to the termination hearing." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999). At the termination hearing, the mother moved to dismiss the petition to terminate her parental rights on the grounds that E.G. had recently asked to have a visit with the mother and the visit never took place. Even if we understood this to be a request for a service, the request came too late. *See id.* (requiring the demand for services to be made "prior to the termination hearing"). Additionally, while there were times the mother asked the department of human services (DHS) for more visits, we have not found any evidence in the record that the mother raised the issue with the court. *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS' response to a request for other services, the parent must come to the court and present this challenge."); *see also* Iowa Code § 232.99(3) ("The court shall advise the parties that failure to identify a deficiency in services or to request additional services may preclude the party from challenging the sufficiency of the services in a termination of parent-child relationship proceeding."). And the mother

has not identified in her appellate brief a time she properly raised this issue with the juvenile court.[2]

Even if the mother's claim regarding lack of reasonable efforts was preserved for our review, we would not find it has merit. Generally, the concept of reasonable efforts encompasses a visitation arrangement between a removed child and their parent. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa 1996). But DHS "must assess the nature of its reasonable efforts obligation based on the circumstances of each case." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). Here, E.G.'s therapist opined not having any family therapy or visits "would be most beneficial to [E.G.] at present. She needs the stability of knowing that there will be no other changes in her life . . . ." The therapist based this, in part, on E.G. being adamant "that she does not want to see her mother. She stated that she has no trust or confidence that her mother will be stable." While the mother maintains E.G.'s decision not to see her was a result of interference by E.G.'s uncle, we believe E.G.'s own stated reasons for her decision. According to the caseworker's report to the court, as of December 2017,

> [E.G.] expressed frustration and hurt feelings with her mother not completing the recommended court ordered services. [E.G.] states that she has been removed from her mother's care at least two other times and has moved to many different homes. [E.G.] states that she is upset with her mother and doesn't want to have visitation if she is doing nothing to get her back.

Moreover, the juvenile court did not base its decision that E.G. could not be returned to the mother on the mother's recent lack of contact with E.G. This case

---

[2] The mother maintains this issue was preserved for our review because she "denied the allegations of the petition. [And she] moved the court for dismissal of this code section [claiming] that the State has failed to prove its case . . . ."

was initiated upon allegations the mother, who was E.G.'s primary caretaker, was leaving E.G. home alone for hours at a time—sometimes overnight—while the mother used methamphetamine. Additionally, E.G. reported times the mother slept for two to three days, during which E.G. was unable to wake her. Between E.G.'s removal in May 2017 and the termination hearing in August 2018, the mother did not participate in any services to address her use of methamphetamine. She did not complete a substance-abuse evaluation and did not attend treatment. Of the thirty-one times she was asked to submit to a drug test, the mother did so only four times. She tested positive for methamphetamine two of those times—including as late as March 1, 2018—and the results from her most recent test were not yet available at the time of the termination hearing. The mother tested negative for substances only one time during the duration of the proceedings. Additionally, the mother did not otherwise cooperate with services and went stretches of time without communicating with anyone involved with the case. It is for these reasons E.G. would be at risk of suffering an adjudicatory harm if she was returned to the mother's care. The State has proved the statutory grounds for termination pursuant to section 232.116(1)(f) by clear and convincing evidence.

Next, we consider whether the parent-child bond prevents the court from terminating the mother's parental rights. *See* Iowa Code § 232.116(3)(c) (allowing the court to not terminate parental rights when "the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). The parent bears the burden to prove a factor weighing against termination applies. *In re A.S.,* 906 N.W.2d 467, 476 (Iowa 2018). The mother has not met her burden; she insists that a child of eleven must be bonded to her

mother, but the record does not support this assertion.  Moreover, E.G. has been outside of her mother's care a number of times[3] during E.G.'s lifetime.  E.G. is ready for permanency and stability; terminating the mother's parental rights will give E.G. the chance to experience them.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

[3] According to the testimony of the uncle who has been caring for E.G., E.G. has been formally removed from the mother's care three times and E.G.'s family has intervened and taken care of E.G. without prompting from the State in two other instances.