In the Interest of S.J. and
K.J., Minor Children,

R.W., Father of S.J., Appellant.

No. 00–83.

Court of Appeals of Iowa.

Oct. 25, 2000.

Stephen B. Jackson and Stephen B. Jackson, Jr. of Jackson Law Office, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, and Lance Heeren, Assistant County Attorney, for appellee State.

Barbara A. Connolly, Cedar Rapids, guardian ad litem.

Heard by SACKETT, C.J., and STREIT and VAITHESWARAN, JJ; but decided en banc.

VAITHESWARAN, J.

The juvenile court terminated Roy's rights to parent Shiron. On appeal, Roy contends: (1) the Department of Human Services did not afford him reasonable reunification services and (2) the evidence was insufficient to establish Shiron could not be returned to his custody. We affirm.

### I. Background Facts and Proceedings

Shiron was born to Roy and Crisca on April 2, 1996. Approximately four months after his birth, Roy was jailed on a drug charge and was ultimately convicted and imprisoned.

Crisca subsequently gave birth to another child. When cocaine was discovered in this child's system, the State instituted child in need of assistance proceedings. Crisca did not cooperate with the Department of Human Services following commencement of these proceedings. At the end of the year, she went to Mississippi, leaving Shiron in her mother's care at a home that was the site of illicit drug activity.

The State applied to remove Shiron from the home based on: (1) his mother's noncooperation; (2) his mother's absence from the State; (3) his younger half-sister's birth with cocaine in her system; and (4) the drug activity in the home. The juvenile court granted the application and, in early 1999, Shiron was placed in foster care where he remained throughout the proceedings. Roy, who remained in prison, stipulated to an adjudication of Shiron as a child in need of assistance.

In August 1999, the State moved to terminate the parental rights of Roy and Crisca as to Shiron.[1] Several weeks before the termination hearing, Roy was released to a half-way house. He attended and participated in the hearing. The juve-

nile court terminated his rights to parent Shiron.[2] This appeal followed.

### II. Standard of Review

■ We review termination cases de novo. *In re J.L.W.*, 570 N.W.2d 778, 780 (Iowa App.1997). The State must show grounds for termination of a parent's rights by clear and convincing evidence. *In re E.K.*, 568 N.W.2d 829, 830 (Iowa App.1997).

### III. Reasonable Services

Roy first maintains the department did not make reasonable efforts to reunite him with Shiron. The State responds: (1) Roy did not preserve error on this issue by timely requesting services and (2) Roy's incarceration made him unavailable to receive services.

■ We disagree with the State on its error preservation claim. Roy completed and returned a social history worksheet sent by the department shortly after the child in need of assistance petition was filed. Although he did not expressly request reunification services, he asked what was going on with his son and requested that his son be placed in a clean, drug-free home. He also wrote, "[i]f my son well been [sic] is not proper I would like for him to place with my old [sic] daughter Selene ..." We conclude Roy's correspondence with the department was essentially a request for services. Accordingly, we reject the State's error preservation claim and proceed to the merits.

■ The State concedes it did not afford Roy reasonable reunification services as statutorily mandated. *See* Iowa Code section 232.99(3), 232.102(9) (1997). However, citing our holding in *In re E.K.*, 568 N.W.2d 829, 831 (Iowa App.1997), the State maintains Roy's incarceration rendered him unavailable to receive such ser-

---

1. The State also moved to terminate the rights of Crisca and another father as to one of Shiron's half-sisters.

2. The court also terminated Crisca's parental rights vis-a-vis Shiron and his half-sister and terminated the rights of his half-sister's father. Neither of them have appealed.

vices. We do not read *In re E.K.* as broadly as the State does. Although we agree a parent's imprisonment may create difficulties in providing reunification services, we are not convinced imprisonment absolves the department of its statutory mandate to provide reunification services under all circumstances. Instead, we conclude the department must assess the nature of its reasonable efforts obligation based on the circumstances of each case. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (noting State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to care of parent); *In re L.M.W.*, 518 N.W.2d 804, 807 n. 1 (Iowa App.1994) (noting reasonable efforts mandate requires agency to make reasonable efforts to prevent placement or to reunify families *in each case*) (emphasis in original); Iowa Code § 232.102(12) (1999) (court may waive reasonable efforts requirement under certain circumstances only with written findings of fact based on evidence in record).

The services required to be supplied an incarcerated parent, as with any other parent, are only those that are reasonable under the circumstances. In determining what services are reasonable under the circumstances, the department may wish to consider some or all of the following factors, among others, if applicable: the age of the children, the bonding the children have or do not have with their parent, including any existing clinical or other recommendations concerning visitation, the nature of parenting deficiencies, the physical location of the child and the parent, the limitations of the place of confinement, the services available in the prison setting, the nature of the offense, and the length of the parent's sentence. The department has an obligation to make a record concerning its consideration of this issue.

The department here provided no reunification services until one month before the termination hearing, when it allowed Roy to have supervised visits with his son and made arrangements for Roy to attend child-development and parenting classes. We nevertheless conclude these services satisfied its statutory mandate. Before the department initiated services, Roy was imprisoned at a distant facility, rendering any provision of reunification services infeasible. When he was transferred closer to his son and sought services, the department immediately provided them. Roy complains, however, that the department did not give him a chance to demonstrate these services were working, but elected instead to proceed with its termination application. The department's worker addressed this concern:

> Q: What's so important about [Shiron's] need for permanency that we would forego giving the father another eight months to get out of the [half-way house] and establish a home for himself and the child and get involved in substance abuse treatment he may or may not need?
>
> A: I would say based on the history of his incarcerations. [Shiron] has a need for consistency and to be worked with, someone to help him reach his potential, given his limited ability.
>
> Q: How would you weigh the risk, or probability that [Roy] in another eight months might be able to be considered as a placement option for [Shiron], weighing that against the harm of [Shiron] in having to wait that long?
>
> A: I would say based on his history, again it's far more important for [Shiron] to have that stability and permanency.

As will be discussed further below, we cannot conclude the department's decision to forgo further reunification services amounted to a violation of its statutory mandate.

### IV. Sufficiency of Evidence

The juvenile court terminated Roy's parental rights under Iowa Code

section 232.116(1)(g).[3] Roy maintains the evidence is insufficient to support the fourth prong of that provision which requires the State to prove the child cannot be returned to a parent's custody. He maintains he complied with all the department's requirements set forth in its case permanency plans, was substance-free, parented five children, and was scheduled to take parenting classes to learn how to address Shiron's special needs. We agree with Roy that he took steps to facilitate reunification with his son. On his own initiative, he participated in prison programs designed to address his substance abuse problems. He also made arrangements to participate in child-development and parenting classes and began visitation with Shiron upon his release to the half-way house. These laudable efforts, however, came too late. *See In re C.B.,* 611 N.W.2d at 495.

Roy was imprisoned for all but four months of Shiron's young life and for portions of the lives of his other five children. He had no contact with Shiron until shortly before the termination hearing. By then, the required removal time set forth in Iowa Code section 232.116(1)(g)(3) had elapsed. *See In re C.B.,* 611 N.W.2d at 494 (citing Iowa Code § 232.116(1)(e), (g) and noting the needs of a child are promoted by termination of a parent's rights if parent has not had contact with the child for the time limits specified by statute). There was no chance of immediate reunification, as Roy was still incarcerated.

There was also little chance of imminent reunification. Roy himself acknowledged at the termination hearing that although his three supervised visits with Shiron were successful, he had not yet had unsu-

pervised visits or overnight stays with his son. Additionally, while Roy was scheduled to be paroled three months after the termination hearing, a treatment coordinator at the half-way house testified he would need transitional time after his release to adjust before taking on full time child care responsibilities. The department's worker echoed this sentiment, stating it would take at least six months from the time Roy was released from the half-way house to be in a position to assume care of Shiron. We have repeatedly stated that patience with parents should be limited to avoid intolerable hardship to the child. *See, e.g., In re A.Y.H.,* 508 N.W.2d 92, 96 (Iowa App.1993). This is such a case.

■ Finally, we note Roy's positive steps toward rehabilitation did not eliminate his past. While a once unfit parent may not automatically be deemed unfit, a parent may not wipe the slate clean merely by professing a desire to do so. *In re D.J.R.,* 454 N.W.2d 838, 845 (Iowa 1990). We have considered a parent's arrests and incarcerations in determining whether return of a child to a parent would result in harm. *See In re D.P.,* 465 N.W.2d 313, 315 (Iowa App.1990). Here, the juvenile court stated:

> While all are hopeful that [Roy] will remain crime and drug free, his past is probably a better predictor of the future than his promises in court. On his first felony offense, his parole was twice revoked for substance abuse problems. After he discharged that sentence, he was convicted of two counts of Delivery of Crack Cocaine. Even his counselor [Allen], while hopeful of [Roy's] recovery

---

**3.** That provision authorizes termination if:
  g. The court finds that all of the following have occurred:
  (1) The child is three years of age or younger.
  (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
  (3) The child has been removed from the physical custody of the child's parents for at

least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
  (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

and intentions, testified there is no guarantee he is going to make it this time.... [Roy] is fifty years old and has just now come to the realization that drugs and crime have ruined his life. [Shiron] is too young to have to wait any longer for his father.

We agree with and adopt these findings as our own. We affirm the juvenile court's termination of Roy's rights to parent Shiron.

**AFFIRMED.**