**IN THE COURT OF APPEALS OF IOWA**

No. 14-0847
Filed September 17, 2014

**IN THE INTEREST OF J.H.,**
**Minor Child,**

**J.H., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District Associate Judge.

A father appeals the termination of his parental rights to his son, born in 2008. **AFFIRMED.**

Jesse A. Macro of Gaudineer & George, L.L.P., West Des Moines, for appellant father.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, Wayne Reisetter, County Attorney, and Sean Weiser, Assistant County Attorney, for appellee State.

Kayla Stratton of the Des Moines Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**VAITHESWARAN, P.J.**

A father appeals the termination of his parental rights to his son, born in 2008. He contends the Department of Human Services failed to make reasonable efforts towards reunification.

## I.  Background Facts and Proceedings

The child was removed from the parents' custody in 2010, based on substance abuse and domestic violence. He remained out of the father's care for over three years. During that period, the father spent a significant portion of time in jail or prison. He was most recently released just two months before the termination hearing.

Following the hearing, the district court terminated the father's parental rights pursuant to Iowa Code sections 232.116(e) (requiring proof of several elements including proof that parent failed to maintain significant and meaningful contact with the child); and (f) (requiring proof of several elements including proof that child could not be returned to parent's custody). Iowa Code §§ 232.116(e), (f) (2013). The father appealed.

## II.  Reasonable Efforts

The department has an obligation to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7). The concept includes "visitation designed to facilitate reunification while providing adequate protection for the child." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

The district court addressed the department's reasonable efforts obligation as follows:

> [The father] claims that reasonable efforts have not been made to reunify him with his son. He claims that he has not been permitted to have family interactions with [the child] for a significant period of time, and that he has written letters which have not been delivered to his son. [The father], however, also acknowledged in writing to the court that he has not done what has been asked of him, although he claims he could not afford treatment, or tried and was turned away. He was offered individual therapy, substance abuse treatment, mental health treatment and anger management treatment. The court finds that reasonable efforts to reunify were provided.

On our de novo review, we are less sanguine about the department's reunification efforts.

The department social worker overseeing the case admitted she did nothing to facilitate reunification while the father was incarcerated. Her only reason for declining to afford services during these periods was that the agency was not requested to do so.

The department's reasonable efforts obligation is not triggered by a request. Although a parent is required to seek new and different services if the original services are deemed inadequate, the department's duty to work towards reunification of parent and child begins at the moment of removal and continues through termination, unless statutorily waived. *In re C.B.*, 611 N.W.2d at 492-93 (stating concept "covers both the efforts to prevent and eliminate the need for removal" and stating several termination provisions contain "a common element which implicates the reasonable effort requirement"). While incarceration may render the provision of services more difficult, it does not absolve the department of the obligation to make reasonable reunification efforts. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). Notably, the obligation was a substantive requirement of both statutory grounds on which the district court relied in

terminating the father's parental rights. *See* Iowa Code §§ 232.116(1)(e), (f). For these reasons, the department could and should have tried to address the concerns that led to the removal of the child, even when the father was behind bars.

While the department shirked its responsibilities to the father during his periods of incarceration, we nonetheless conclude the agency minimally satisfied its statutory mandate by paying for a psychosocial evaluation and by facilitating the father's participation in a drug treatment program.

That said, we are troubled by the refusal of the child's therapist to recommend any contact between the father and child, including supervised visits or correspondence, which the father agreed to send to the department for pre-screening. Her rationale essentially boiled down to "once a bad parent always a bad parent," a view that is inconsistent with the department's statutory reunification obligation. The department was remiss in unquestionably accepting her opinion. But, in the end, the department's decision to deny contact was based on the father's established past conduct, which revealed he was not a safe person to be around the child. The department summarized the safety concerns as follows:

> [The father's] involvement has been very sporadic with [the child]. He has disengaged from [the child's] life on several occasions since DHS became involved in 2010. The[r]e are times when [father] admits to using chemical[s] again, not taking his medication, and not being able to work or find a place to live on a consistent basis. [The father] reports he is now homeless following a protective order forcing him out of his mother's home. . . .

> [The father] has a history of violence. He has a pending domestic violence charge where he is alleged to have assaulted a cousin that was living in his Mom's home with him. [The child] is not safe to be

around his father at this time. [The father] can lapse into anger easily.

These concerns required a limitation of contact between father and child. *See S.J.*, 620 N.W.2d at 526 (holding "While a once unfit parent may not automatically be deemed unfit, a parent may not wipe the slate clean merely by professing a desire to do so. We have considered a parent's arrests and incarcerations in determining whether return of a child to a parent would result in harm.").

Significantly, the father only began to correspond with the child shortly before the termination hearing. By this time, three years had elapsed since the child's removal, and the State had filed its petition to terminate parental rights. Under these circumstances, we conclude the department's decision to rely on the therapist's no-contact recommendation is not a violation of its reasonable efforts mandate.

We affirm the termination of the father's parental rights to his child.

**AFFIRMED.**