**IN THE COURT OF APPEALS OF IOWA**

No. 18-2007
Filed March 6, 2019

**IN THE INTEREST OF L.W.,**
**Minor Child,**

**J.P., Father,**
     Appellant.
_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Nicholas Dial of Dial Law Office, P.C., West Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

ConGarry Williams of State Public Defender's Office, Des Moines, guardian ad litem for minor child.

Considered by Doyle, P.J., and Mullins and McDonald, JJ.

**DOYLE, Presiding Judge.**

L.W. was born in September 2016 and tested positive for methadone, hydrocodone, and benzodiazepines at birth. The test results were reported to the Iowa Department of Human Services (DHS), and the child was ultimately removed from her parents' care. The child was placed in the care of the child's maternal grandmother, where the child has since remained.

Almost two years after the child's birth, the State filed a petition seeking termination of the parents' parental rights. The mother consented to the termination of her parental rights; the father contested termination.[1] Following a hearing, the juvenile court terminated the father's parental rights.

The father now appeals. He maintains the court should have granted him visitation while he was incarcerated at a correctional facility or given him additional time for reunification, given his "short prison sentence" and because he "availed himself of numerous services while in prison." He also suggests the juvenile court erroneously delegated its authority in determining whether his request for visitation at the prison should be granted. Upon our de novo review, *see In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018), we disagree.[2]

The father has a significant criminal history, dating back to at least 2001, when he was arrested for assault causing bodily injury. His criminal activities include numerous charges related to domestic violence as well as use of illegal

---

[1] The mother does not appeal.

[2] We need not review any step of the three-step analysis the juvenile court must make in terminating a parent's parental rights if the step was not challenged by the parent on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *see also* Iowa Code § 232.116(1)-(3).

substances. From 2001 to April 2016, the father was convicted of more than twenty crimes. Though the convictions were mostly misdemeanors of all levels, he had two felony convictions in 2006 relating to domestic abuse assault.

Before the child's birth in 2016, the father was charged with driving while his license was barred and placed in jail. While in jail, he was also charged with fifth-degree theft. He was released around August 2016, but he was subsequently incarcerated for violating a no-contact order and again for driving while barred. He was released from jail and, while not present at the child's birth, he was at the hospital the night of her birth, though he questioned the child's paternity. The father's paternity was established at the end of November 2016. In December 2016, the father was arrested on a charge of domestic abuse assault, second offense, for allegedly punching his paramour in the face. He was also charged with probation violations. He was again placed in jail, and he remained there until April 2017, when his probation was revoked.

Following the revocation of his probation, the father was moved from jail to the Mount Pleasant Correctional Facility, where the father was imprisoned for approximately thirteen months. During that time, the father requested visitation with the child at the prison, despite having had very limited contact with the child since her birth. Based upon the father's minimal involvement in the child's life up to that point, the great distance between the child's home and the correctional facility, and the short visitation time allowed by the correctional facility, and other factors, the DHS did "not believe it [was] reasonable for [the] child to have visitation/interactions with the father while he [was] in prison."

In the court's July 2017 review order, the court adopted and incorporated the DHS's recommendations set out in the State's report to the court, thus rejecting the father's request for visitation at the prison. The court specifically addressed the father's request for prison visitation in its September 2017 permanency order, adopting the caseworker's reasons for denying visitation.

It is true that the State must make reasonable efforts to reunify a parent and a child, even when the parent is incarcerated. *See In re S.J.*, 620 N.W.2d 522, 524-25 (Iowa Ct. App. 2000). But, as with any other parent, the "services required to be supplied an incarcerated parent . . . are only those that are reasonable under the circumstances." *Id*. at 525. In determining what is reasonable, we consider

> the age of the children, the bonding the children have or do not have with their parent, including any existing clinical or other recommendations concerning visitation, the nature of parenting deficiencies, the physical location of the child and the parent, the limitations of the place of confinement, the services available in the prison setting, the nature of the offense, and the length of the parent's sentence.

*Id.*

Here, based upon those considerations, the DHS recommended denying the father's request for visitation. The court agreed and adopted those recommendations upon its review. The juvenile court clearly did not delegate its authority to the DHS in determining whether to grant the father's request for visitation.

Additionally, upon our de novo review of the record, we agree with the denial of his request for prison visitation. The father's criminal actions—just during the pendency of the case—demonstrate the father was unable or unwilling to put his child's needs first. It was only after he was imprisoned that he showed any interest

in being a father to the child. While transporting the child the great distance to visit the father was possible, it was clearly not in the child's best interests, given the child's young age, lack of a relationship with the father, and the short duration of any visit.

Finally, the facts of this case do not support granting the father additional time to work toward reunification. Despite years of criminal convictions, at the termination-of-parental-rights hearing the father minimized his struggles with anger, violence, and use of illegal substances in his testimony. Although he admitted there was documentation of violence in almost every one of his relationships, he referred to the victims' abuse reports as mere allegations and never admitted any specific actions on his part. Yet, there are several criminal reports of his striking his paramours over the years in the record, with police reports documenting his victims' injuries. When asked about his history of abusing substances, the father denying having "abused" them, testifying he only had a history of "using substances." He testified it was possible that he had downplayed his use of drugs in previous substance-abuse evaluations to avoid any recommendation for treatment. He also did not see the risk of being with others who are abusing drugs, suggesting he would simply refrain from joining them. The father had time while imprisoned to reflect upon his actions over the years, accept responsibility for his part in the matters, and work to address the issues that caused his actions of violence and use of illegal substances. His testimony shows he has not internalized any need to make real behavioral changes, and delaying this child's permanency any longer in hopes the father recognizes his part in the cycle of violence and actually makes life modifications is unrealistic and not in the child's

best interests. Because we agree with the juvenile court's denial of the father's requests for visitation while in prison and for additional time for reunification, we affirm the court's order terminating the father's parental rights.

**AFFIRMED.**