# IN THE COURT OF APPEALS OF IOWA

No. 19-2065
Filed April 1, 2020

**IN THE INTEREST OF G.D. and O.D.,**
**Minor Children,**

**M.D., Father,**
  Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

A father appeals adjudication of his children as in need of assistance and the denial of his motion for visitation. **AFFIRMED.**

John J. Hines of Dutton, Daniels, Hines, Kalkhoff, Cook & Swanson, P.L.C., Waterloo, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Tammy L. Banning of Juvenile Public Defender's Office, Waterloo, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., Schumacher, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCOTT, Senior Judge.**

A father appeals the adjudication of his two children, G.D., born in 2012, and O.D., born in 2016, as children in need of assistance (CINA). He also challenges the denial of his request for visitation.

**I.      Background Facts and Proceedings**

The parents have had a rocky marriage riddled with extramarital affairs and verbal and physical abuse. The father has generally served as the children's primary caretaker and worked part time while the mother worked full time. The family came to the attention of the Iowa Department of Human Services (DHS) in April 2019 upon the mother's allegations of sexual contact between the father and both children. According to the mother, G.D. reported sexual abuse on the part of the father. The mother videotaped her exchange with the child,[1] during which the child reported sexual abuse to the mother and that the father directed him not to disclose the same.[2] The mother then left the children with the father and proceeded to the police department, where she presented the video to law enforcement.[3] The children were removed from both parents' care. G.D. reported to a DHS worker that he shared a secret with his mother, but he declined to provide any further information to the worker.

---

[1] Video and audio recordings of the mother's exchange with the children were admitted as evidence at the adjudication hearing.

[2] Specifically, the child reported the father would, among other things, "line both of our penises up" while they are naked, the father would make the child penetrate the father's anus, and they would lick each other.

[3] Law enforcement considered the video child pornography, as it depicted the older child climb on top of the younger child and demonstrate some of the abuse, a humping motion, while both children were not wearing any underwear or diapers.

Both children underwent a physical examination. Each examination concluded: "There is no residual physical diagnostic sign of sexual or physical abuse on his examination today. A normal examination does not rule out the possibility of sexual abuse or prior penetration." The older child underwent a child-abuse-assessment interview, during which the child did not forward any allegations of sexual abuse on the part of the father.

The State filed a petition alleging the children to be CINA pursuant to Iowa Code section 232.2(6)(c)(2) and (d) (2019). At the subsequent adjudication hearing, the father stipulated to the children being CINA based on the mother's conduct under section 232.2(6)(c)(2), which defines a CINA as a child "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of" the failure of the child's parent "to exercise a reasonable degree of care in supervising the child." The father contested adjudication under section 232.2(6)(d), which defines a CINA as a child "[w]ho has been, or is imminently likely to be, sexually abused by the child's parent." The father testified he and the mother's marriage was problematic and the mother desired the marriage to be dissolved. When asked whether G.D. has been exposed to sexually explicit materials, the father vaguely testified the child "has watched a lot of YouTubes" and "different movies with us where we've had to change the channel because things come up." The father also testified G.D. has walked in on him having intercourse with another woman and the mother would take the children "on her dates" and to her boyfriend's home. The father also submitted evidence that G.D. has suffered from a foreskin condition, the condition would require the father to manipulate the child's foreskin before and after he was circumcised, and application of a prescribed medication was an

important part of G.D.'s treatment plan. He denied ever touching his children in a sexually inappropriate way.

In August, the father filed a motion for supervised visitation, noting DHS and the children's guardian ad litem were denying him visits. The court entered its adjudicatory order in September. The court noted its review of the video footage containing G.D.'s reports of sexual abuse to the mother; the court expressly found the child's statements to be credible. Given the specificity of the child's reports, the court found it implausible that the allegations were fabricated, noting, "A child of that age would not have access to knowledge of the various sexual activities without having actually been exposed in some way to those activities." The court was not surprised the child did not repeat the allegations when he underwent a child-abuse-assessment interview, given his unfamiliarity with the environment he was in and the person interviewing him, in addition to the fact he had just been removed from his home following his revelation of allegations of sexual abuse. The court found the father's testimony that he has never sexually abused the children and his explanations for the child's allegations less credible. As to the father's conduct, the court adjudicated the children CINA pursuant to Iowa Code section 232.2(6)(d).[4] The court left visitation within the discretion of DHS and the guardian ad litem.

At the subsequent hearing on the father's motion for visitation, G.D.'s play therapist, whom G.D. had been seeing since May, specifically testified to her

---

[4] The court also adjudicated the children CINA pursuant to section 232.2(6)(c)(2) as a result of the mother's conduct. That ground for adjudication is not challenged on appeal.

opinion that having contact with the father would result in G.D. regressing both emotionally and therapeutically. The therapist specified G.D. displays a high level of anxiety and he discloses very specific information concerning the allegations and then avoids the subject by shutting down. The therapist testified G.D.'s behavior indicates he is at a very vulnerable place and any sort of change or disruption to his security would result in regression. The therapist also testified that if the father were allowed visitation with O.D., G.D.'s protective attributes as to his younger brother would be detrimental to his progression in therapy. In its ruling on the motion, while the court acknowledged the father had engaged in services, the court concluded that additional therapy for the child was necessary before the father should be allowed visitation.

The matter proceeded to a dispositional hearing in November. By this point, O.D. had also begun attending play therapy. The State requested that therapy continue and visitation continue to depend on the children's progress in therapy. The father noted his willingness to participate in visitation in a therapeutic setting and requested that his therapist and the children's therapist communicate to facilitate the same. In its dispositional order, the court noted the father's frustration in not being allowed visitation. The court confirmed its prior order prohibiting visitation but scheduled a hearing in January 2019 to hear from the children's therapist regarding the children's progress and the issue of visitation. Following the entry of an order continuing that hearing, the father appealed.

## II. Standard of Review

Appellate review of CINA proceedings is de novo. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). While not binding upon us, we accord weight to the juvenile

court's factual findings, especially when credibility is at issue. *Id.*; *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). Iowa Code section 232.96(2) requires the State to prove its allegations by clear and convincing evidence, which "exists when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *L.H.*, 904 N.W.2d at 149 (altered for readability) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III. Analysis

The father challenges the sufficiency of the evidence supporting adjudication under section 232.2(6)(d), which defines a child in need of assistance to include an unmarried child "[w]ho has been, or is imminently likely to be, sexually abused[5] by the child's parent." As the State points out, in this case, the issue is one of credibility. The juvenile court had the opportunity to view video footage of G.D.'s disclosure of sexual abuse.[6] The child provided detailed and specific descriptions of the abuse. The child reported he would lay on his father's chest while neither of them had clothes on and the father would "line both of [their] penises up." The child additionally reported he sometimes has to push his penis into the father's anus. We agree with the juvenile court that "[a] child of that age would not have access to knowledge of the various sexual activities without having actually been exposed in some way to those activities."

---

[5] "'Sexual abuse' means the commission of a sex offense as defined by the penal law." Iowa Code § 232.2(49).

[6] While we have received and reviewed the audio exhibit, the video exhibit was not provided to this court as part of the record on appeal. Following an order for limited remand, the juvenile court entered an order clarifying the custodian of the video exhibit feared transporting or copying the exhibit would be in violation of federal law. In any event, we find the evidence sufficient to support adjudication without resort to the video exhibit.

We turn to the father's explanations for the child's allegations. The father provided various explanations as to how G.D. had knowledge of the sexual acts he described, namely his exposure to sexually explicit materials and conduct. The juvenile court found the father's explanations less credible than the child's specific allegations of inappropriate sexual contact. As noted, we give deference to the juvenile court's credibility assessments. *D.D.*, 653 N.W.2d at 361.

> While we might have made different findings had we been the trier of fact, the district court heard the [father testify], and we did not. Since this particular case turns largely on the relative credibility of [G.D. and the father], and more generally on their trustworthiness, we defer to the district court's findings

and agree with its conclusions. *In re Marriage of Brown*, No. 19-0705, 2020 WL 569344, at *4 (Iowa Ct. App. Feb. 5, 2020) (quoting *In re Marriage of Zogg-Kellet*, No. 09-0652, 2010 WL 625023, at *4 (Iowa Ct. App. Feb. 4, 2010)). "Giving the appropriate deference to the juvenile court's findings of fact, particularly its assessments of credibility, we conclude the State proved by clear and convincing evidence the children were in need of assistance under" section 232.2(6)(d). *In re E.A.H.*, No. 06-1731, 2006 WL 3802701, at *3 (Iowa Ct. App. Dec. 28, 2006); *accord In re S.M.D.*, No. 12-1889, 2013 WL 100222, at *2 (Iowa Ct. App. Jan. 9, 2013).

We turn to the father's challenge to the denial of his request for visitation. He only complains the court's decision was "based on a speculative and conclusory opinion from a play therapist that [G.D.] might regress if any contact with the father was allowed." Given the allegations against the father, which we have concluded are supported by clear and convincing evidence, coupled with the professional recommendation of the therapist and the reasoning provided for the

recommendation, we find the denial of the father's motion for visitation was reasonable under the circumstances. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) (noting parent is only entitled to services that are reasonable under the circumstances). To the extent the father challenges the court not authorizing visitation at the time of disposition, at the hearing, the father noted his willingness to engage in supervised visitation in a therapeutic setting but only requested that his therapist communicate with the children's therapist to facilitate the same in the near future. The court questioned the parties concerning an update as to the children's therapist's position on visitation. Absent an update, the court decided to set the matter for hearing to hear from the therapist and reevaluate visitation. The father lodged no objection to the proposed course of action, and we find no error in the court's decision to proceed in this manner.

## IV. Conclusion

We affirm the CINA adjudications and the court's denial of the father's initial motion for visitation. We find no error in the court's decision to reconsider the issue of visitation at a subsequent review hearing.

**AFFIRMED.**