## IN THE COURT OF APPEALS OF IOWA

No. 20-0743
Filed August 5, 2020

**IN THE INTEREST OF C.D. AND S.D.,**
**Minor Children,**

**C.W., Father of C.D.,**
        Appellant,

**K.B., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, District Associate Judge.

A mother and a father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jessica J. Chandler of Chandler Law Office, Windsor Heights, for appellant father.

Emily DeRonde of DeRonde Law Firm, PLLC, Johnston, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Chuck Fusion of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**BOWER, Chief Judge.**

The mother of C.D., born January 2011, and S.D., born October 2014, and the father of C.D. separately appeal the termination of their parental rights to their children.[1]

Our review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *Id.* (citation omitted).

*Father's appeal.* The father's appeal hinges on his assertion C.D. can be returned to the mother. The father cannot avoid termination of his parental rights with this argument. *See In re D.G.*, 704 N.W.2d 454, 459–60 (Iowa Ct. App. 2005) (stating that one parent cannot assert facts or legal positions pertaining to the other parent as the court makes a separate adjudication as to each parent); *see also In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) ("[The father] did not have standing to assert that argument on [the mother's] behalf in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of *his* parental rights."). "[I]n termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally." *D.G.*, 704 N.W.2d at 459.

There is clear and convincing evidence to support termination of the father's parental rights under Iowa Code section 232.116(1)(f) (2019).[2] C.D. is over the

---

[1] The father of S.D. does not appeal the termination of his parental rights.
[2] Section 232.116(1)(f) allows the court to terminate parental rights if it finds all of the following:
      (1) The child is four years of age or older.

age of four. Iowa Code § 232.116(1)(f)(1). The children were removed from their mother's physical custody on October 1, 2018, because of the mother's substance abuse and parenting deficiencies. *Id.* § 232.116(1)(f)(2); *see In re R.P.*, No. 18-2002, 2019 WL 1055739, at *2 (Iowa Ct. App. Mar. 6, 2019) (collecting cases on the proposition that "removal of the child from one parent is sufficient to support the termination of another parent's parental rights"), *further review denied* (Mar. 28, 2019). C.D. has never been in the father's custody, and the children were removed from their mother's custody for eighteen consecutive months when the juvenile court entered the termination order on April 29, 2020. Iowa Code § 232.116(1)(f)(3). Because C.D.'s father was incarcerated at the time of the termination trial, the child could not be returned to him. *Id.* § 232.116(1)(f)(4). We therefore affirm the termination of the father's parental rights to C.D.

*Mother's appeal.* While acknowledging the first three elements of section 232.116(1)(f) are established for both children, the mother maintains the children could safely return to her care. She asserts she has been sober since May 2019, has employment, housing, and transportation, and she is complying with substance-abuse and mental-health treatment. Unfortunately, the mother's dishonesty with providers and the juvenile court cast doubt on her claims that she

---

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

has confronted her substance-abuse problems and no longer poses a danger to her children's safety.[3]

The juvenile court provided extensive findings of fact, footnoted with citations to the lengthy juvenile court record. We will not repeat those findings here. It is enough to state we find the mother's assertions she can safely parent her children are less than convincing. She acknowledged lying in court about her methamphetamine use, provided misleading testimony about her relationship with a man the department of human services (DHS) providers found inappropriate to be around the children, lacked candor with others, and claimed others were lying, including C.D. and service providers.

The juvenile court found the mother's credibility was "severely damaged" and her and her paramour's testimony about their relationship being over was contradicted by "reliable, credible evidence" to the contrary. Giving weight to the juvenile court's explicit credibility findings, *see A.B.*, 815 N.W.2d at 773, we find clear and convincing evidence the children could not be returned to the mother at

---

[3] The juvenile court outlined the mother's "harmful parenting techniques":

These included putting [C.D.] outside alone for timeouts. One of these instances was investigated and resulted in a founded allegation of child abuse. This incident took place in the summer of 2018. [The mother] walked [seven-year-old C.D.] a few blocks from home at night and left [him] standing on a corner and returned home. [Her paramour] retrieved [C.D.] from the street corner about thirty minutes later. During his meeting with the court and to others on other dates, [C.D.] reported that his mom beats him. [The mother's] brother lived with [the mother] for several years until the summer of 2018 and testified that he recalls [C.D.] crying and saying that he was spanked with a belt for lying. [The] brother testified that he believed [C.D.] was spanked by a belt because the redness on his bottom on that occasion was not the usual handprint redness that he would observe on [C.D.] after [the mother] spanked him.

present without risk of adjudicatory harm. There is clear and convincing evidence to support termination of the mother's parental rights under section 232.116(1)(f).

"Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests." *Id.* at 776. In evaluating the children's best interests, we are statutorily required to "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

We may also consider whether the children have become integrated into the placement family, the length of time the children have lived in a stable, satisfactory environment, and whether the placement family is able and willing to continue to integrate the children in the family. *See id.* § 232.116(2)(b).

C.D. and S.D. have been in four placements in eighteen months and have been in J.G.'s care in Missouri since September 2019. Over C.D.'s lifetime, he has spent a long time in J.G.'s care. He lived with J.G. from August 2011 to January 2012 after the mother left him and two older half-siblings there because of her methamphetamine use. C.D. was placed with J.G. by Missouri child protection and the juvenile court in early 2013 and stayed with her until 2015. C.D. then joined his mother and new sibling after the mother left inpatient treatment and moved in with her grandmother in Iowa. In September 2018, DHS removed C.D. and S.D. from their mother and placed them with relatives, then with a foster family, then back to the relatives. J.G. has regularly visited the children throughout these juvenile court proceedings. When the relatives informed DHS they were no longer

a placement option, in September 2019, C.D. and S.D. were placed with J.G. in Missouri. This placement and the distance interrupted C.D.'s relationship with his counselors and complicated visits and family counseling.

J.G. offers a stable and supportive home and will continue to do so. C.D. has repeatedly stated he wishes to live with J.G. because he feels safe. S.D. and C.D. share a strong bond and should remain together. We conclude termination of parental rights and adoption will best provide the children with permanency, safety, and long-term nurturing and growth.

The petition to terminate the mother's rights was filed on December 19, 2019. On January 7, 2020, the mother filed a motion for hearing on reasonable efforts, asserting that DHS unreasonably refused to expand her supervised visits to semi-supervised and unsupervised overnights and had refused to allow family therapy to occur. The court ordered the motion considered with the termination and permanency review hearing.

On appeal, the mother asserts the court erred in finding that reasonable reunification efforts have been made. We, however, agree DHS has made reasonable efforts to reunify the mother and children under the circumstances. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) (noting the department need only provide those services that are reasonable under the circumstances).

The mother also argues termination need not occur under two paragraphs of section 232.116(3): paragraph "a" allows the court to avoid termination if "[a] relative has legal custody of the child[ren]" and paragraph "c" applies if clear and convincing evidence shows "termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship[s]." The juvenile court

noted: "None of the exceptions found in 232.116(3) were asserted by the parties nor do they apply here."  Because the claims were not asserted below, we do not address them here.[4]  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

For the reasons stated, we affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**

---

[4] In any event, we agree with the juvenile court that neither applies here.  J.G. does not have legal custody of the children—DHS does.  *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).  And while the children may have a bond with their mother, the record does not support a finding the bond is such that termination would be detrimental to the children.