## IN THE COURT OF APPEALS OF IOWA

No. 22-0260
Filed April 13, 2022

**IN THE INTEREST OF A.S. and N.S.,**
**Minor Children,**

**A.S., Mother,**
   Appellant.

_____

Appeal from the Iowa District Court for O'Brien County, Shawna L. Ditsworth, District Associate Judge.

The mother of A.S. and N.S. appeals from the juvenile court's dispositional review order and finding of reasonable efforts. **AFFIRMED.**

Kevin J. Huyser of Rensink, Pluim, Vogel & Huyser, Orange City, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Shannon Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**BOWER, Chief Judge.**

The mother of A.S. and N.S. appeals the juvenile court's child-in-need-of-assistance (CINA) dispositional review order and finding of reasonable efforts.[1] We affirm.

Nick is the father of four children, K.S., age seventeen; A.S., age ten; B.S., age six; and N.S., age three. Anna is the mother A.S. and N.S. Nick and Anna are married and were living with the four children when the Iowa Department of Human Services (DHS) received a report Nick had sexually abused B.S. On February 19, 2021, an ex parte emergency removal order was entered transferring custody of all four children to DHS for placement in family foster care. A child protective services child abuse assessment was completed on March 18, which resulted in a founded assessment of sexual abuse against Nick regarding K.S., B.S., and A.S., as well as a founded assessment of denial of critical care against Nick and Anna.[2]

On May 6, the children were adjudicated CINA as defined in Iowa Code section 232.2(6)(c)(2) and (d) (2021).[3] The court ordered reunification services, including family centered services (FCS); Nick's and Anna's participation in mental-health and substance-abuse evaluations; mental-health assessments for K.S., A.S., and B.S.; and supervised visitation services.

---

[1] The father did not appeal.

[2] Anna asserts the assessment was later amended as to her denial of critical care with respect to failing to follow through on medical appointments.

[3] With respect to section 232.2(6)(c)(2), the court found at least three of the children had suffered harmful effects as a result of sexual abuse involving Nick and a lack of protective capacity to prevent the sexual abuse on the part of Anna. The court's findings under section 232.2(6)(d) were based on the father's sexual abuse of B.S., A.S., and K.S. and the imminent likelihood of sexual abuse of N.S.

After an uncontested August 16 dispositional hearing, the court continued out-of-home placement and ordered reunification services to continue, including mental-health therapy, substance-abuse therapy, random drug testing, FCS, family team meetings, and supervised visitation at DHS's discretion. The parents were also ordered to engage in services addressing sexual abuse. The parties agreed to an expanding visitation plan. First, Nick and Anna would have one weekly two-hour supervised visit with the children in a community setting. Anna would also have a supervised weekly visit with A.S., B.S., and N.S. in the family home. After two weeks, Anna's in-home visits would be semi-supervised. After another two weeks, Nick would join Anna for supervised visits with the children in the family home. The parties would review the visitation schedule at a solution-focused meeting.

On September 14, a second child-abuse assessment found Nick had committed second-degree sexual abuse upon B.S.

A solution-focused meeting was held on September 27. The visitation schedule at the time between Nick, Anna, and the three youngest children[4] included a weekly visit on Tuesday for two hours at the family home supervised by the FCS worker and a two-hour visit on the weekend supervised by a relative of Nick. The parties were unable to reach an agreement to expand the visitation schedule because the children's behaviors had reportedly regressed at school, the foster home, and during therapy sessions after Nick joined supervised visits in the family home.

---

[4] K.S. had been placed with another adult out of state.

At a November 17 review hearing, Nick and Anna both requested the children be immediately returned home or, in the alternative, requested the juvenile court find reasonable efforts were not being provided because visitation had not progressed.

The court found the parents had "made progress as it relates to their parenting skills and have demonstrated these skills during their supervised visits"; visits had progressed from supervised in the community to supervised in the home; weekend supervised visits had been added; the parents had changed their work schedules to be more available to care for the children if they were returned; Anna was cooperative with therapy and "has explored signs and symptoms found in children at different age groups related to sexual abuse"; and Nick attended therapy consistently, with the focus to shift from substance abuse to more mental-health based.

However, the court rejected the motion for additional visits or return of custody, writing:

> Progression as it relates to the sexual abuse findings has not occurred.  [Nick] continues to deny any involvement in the sexual abuse.  [Nick] refuses to attend a psychosexual evaluation, offered by [DHS].  Anna refuses to acknowledge this court's finding that [Nick] sexually abused the three older children and was imminently likely to sexually abuse the youngest child. . . .  The court finds visitation should remain supervised until such time as the issues of sexual abuse have been adequately addressed and the children do not remain at imminent risk for sexual abuse.  There is no evidence to suggest that even if [Nick] and Anna are given additional visitation, or provided less supervision at visitation, that this would help [them] address the sexual abuse issues in this case.
> As [Nick] and Anna make progress in these areas, visitation can correspondingly increase and become less restrictive.  [DHS] is in the best position to monitor progress and make determinations regarding visitation.  Additionally, [FCS] provider, the Court Appointed Special Advocate, the attorney and guardian ad litem for

the children as well as the children's therapist should be consulted regarding any changes in visitation. . . .

    The court further finds that reasonable efforts have been made to prevent the need for an out-of-home placement through substance abuse and mental health evaluations for Nick and Anna, therapy services for Nick and Anna, therapy services for [K.S.], [A.S.,] and [B.S.], [Area Education Association] Evaluation Services for [N.S.], [FCS], Solution Focused Team Meeting and supervised visitation but despite such efforts it remains contrary to the welfare of the children to return home until the supervision issues and sexual abuse issues identified in this case have been adequately addressed.

Anna appeals, asserting DHS "has failed to provide increased frequency and duration of visits, and decreased supervision of visits," between herself and her children despite her "compliance with all other directed and Iowa DHS-recommended services." She contends DHS's stance violates its duty to make reasonable efforts to reunify the family. She stresses her participation and progress with services, arguing there is no evidence she "acquiesced in or was otherwise aware of the conduct that resulted in the sexual abuse allegations."[5]

    We review CINA proceedings de novo. While we are not bound by the juvenile court's factual findings, we accord them weight. . . . Ultimately, our principal concern is the best interests of the child[ren]. In determining the best interests of the child[ren], we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future.

In re L.H., 904 N.W.2d 145, 149 (Iowa 2017) (first and fourth alterations in original) (internal citations and quotation marks omitted).

On our de novo review, we discern no reason to interfere with the juvenile court's findings and conclusions. "Child protection statutes 'are designed to prevent probable harm to the child[ren] and do not require delay until after harm

---

[5] The record indicates Anna will only believe the children's allegations if they tell her directly.

has occurred.'" *In re J.S.*, 846 N.W.2d 36, 43 (Iowa 2014) (citation omitted). And DHS's reasonable-efforts obligation depends on the particular case. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). DHS is required to supply services that "are reasonable under the circumstances." *Id.* We are always cognizant "[a] child's health and safety shall be the paramount concern in making reasonable efforts." Iowa Code § 232.102(10)(a).

We commend Anna for her participation in services. "Progress in therapy and similar efforts to 'put the work in' are unquestionably important. But the [child protection] statute doesn't ask whether all the boxes have been checked or the work put in; it asks whether the child remains in need of supervision, care, or treatment." *In re D.D.*, 955 N.W.2d 186, 192–93 (Iowa 2021).

Here, sexual abuse has been identified as a risk to the children's safety. Three children have made reports of sexual abuse by Nick, and the juvenile court has made a finding the children are credible and in need of assistance. B.S. and A.S. have been diagnosed with post-traumatic stress disorder.[6] Anna's refusal or inability to address the danger of sexual abuse presents a safety risk to the children. *See id.* at 193 ("It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists."). We agree with the juvenile court's assessment that "[t]here is no evidence to suggest that even if [Nick] and Anna are

---

[6] The CASA report to the court noted:
> [A.S.] has vocalized to me on several occasions that she is upset and frustrated that her mother does not believe the allegations she has verbalized against Nick. She has stated very mixed emotions about going back into the home. She wants to, because this is what she knows, but at the same time verbalizes anxiety about Nick being in the home.

given additional visitation, or provided less supervision at visitation, that this would help [them] address the sexual abuse issues in this case." Under these circumstances we cannot say increased visitation is in the children's best interests. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996) ("If services directed at removing the risk or danger responsible for a limited visitation scheme have failed its objective, increased visitation would most likely not be in the child's best interests.").[7] We affirm.

**AFFIRMED.**

---

[7] As recently stated by our supreme court:

> While we agree that creating a family utopia certainly can't be DHS's pursuit, nor can permitting child sexual abusers to live with their victims when the sexual abuser has never admitted to the act and thus cannot have been "treated" to fix it, and when the victim's only hope of protection is a mother who has steadfastly denied the fact of her husband's sexual abuse of her children and thus can be counted on for no measure of protection.

*D.D.,* 955 N.W.2d at 194–95.