**IN THE COURT OF APPEALS OF IOWA**

No. 18-2150
Filed March 20, 2019

**IN THE INTEREST OF T.A.,**
**Minor Child,**

**A.M., Mother,**
     Appellant,

**D.P., Father,**
     Appellant.
_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Nicholas Dial of Dial Law Office, P.C., West Des Moines, for appellant mother.

Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

ConGarry D. Williams of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

A mother and father separately appeal the termination of their parental rights to their child, T.A., born in July 2017. Parental rights were terminated pursuant to Iowa Code section 232.116(1)(h) (2018) as to both parents, 232.116(1)(*l*) as to the mother, and 232.116(1)(e) as to the father. On appeal, both parents argue the State did not prove the grounds for termination and the district court improperly denied their requests for an additional six months to achieve reunification. The father additionally argues termination is not in the child's best interest, the Iowa Department of Human Services (DHS) did not make reasonable efforts toward reunification, and the district court should have placed the child in a guardianship to avoid termination.

**I. Background Facts and Proceedings.**

T.A. was removed from the mother's care on August 1, 2017, due to the presence of amphetamine and tetrahydrocannabinol (THC), the active component of marijuana, in the child's body at birth. The mother admitted to using methamphetamine and marijuana throughout her pregnancy. The mother left the child in the hospital without naming the child or signing the birth certificate. She initially consented to the child's removal. In October, T.A. was adjudicated a child in need of assistance (CINA) and paternity was established. A dispositional hearing was held in November. The mother's untreated substance-abuse issues were a concern. T.A. remained in foster care.

A review hearing was held in February 2018. T.A. remained in the custody of DHS due to the mother's untreated substance-abuse issues and homelessness. A permanency hearing was held in August, and the State filed a

petition to terminate. The mother and father requested and were denied a six-month extension. A termination hearing was held in October.

The mother has significant substance-abuse issues and reported she has been a regular user of methamphetamine and marijuana since adolescence. She was arrested in February 2018 and again in June for possession of methamphetamine. In August, at the permanency hearing, the mother still did not have employment, housing, or transportation. The mother admitted to using marijuana and methamphetamine two weeks before the October termination hearing. At the time of the termination hearing, the mother had been engaged in residential substance-abuse treatment for two weeks, which was a condition of her plea agreement for possession of methamphetamine.

The father did not learn T.A. was his child until after T.A.'s birth, at which time the father was in jail on pending criminal charges. The father was subsequently sentenced and incarcerated. While he requested visitation in prison, the district court determined due to T.A.'s age, the distance to the father's prison, the lack of prior contact, and the prison's visitation facilities, visitation was not appropriate. After the father was released to a halfway house, he violated his parole within one month and was again incarcerated. The father was incarcerated at the time of the termination hearing and has had no contact with T.A.

**II. Standard of Review.**

We review termination proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We are not bound by the factual findings of the district court, but we do give them weight—especially when assessing witness credibility. *Id.*

"Grounds for termination must be prove[d] by clear and convincing evidence." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Our primary concern is the best interests of the child." *Id.*

**III. Discussion.**

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *A.B.*, 815 N.W.2d at 774. The mother argues the State did not prove the elements of section 232.116(1)(h) because the child could be returned to her care at the time of the termination hearing. The father argues the district court "erred in finding that the State had proven certain grounds for termination under Iowa Code section 232.116(1)" but does not specify which grounds he is contesting. As to both the mother and father, the State has proved the grounds under section 232.116(1)(h), which allows termination when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

T.A. was eighteen months old at the time of the termination hearing. She was adjudicated a CINA in October 2017. T.A. has never been in the physical custody of either parent. At the time of the termination hearing, the mother was engaged in substance-abuse treatment at a residential facility; the father was

incarcerated. The mother contends T.A. could have been placed with her at the facility. The mother has no history of stable housing and has been homeless for the duration of T.A.'s life. Improvement on the eve of termination is not enough for T.A. to safely be placed in her mother's care. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (finding "the changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient"); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (finding termination appropriate even though the mother did "display some improvement in some areas and was currently committed to sobriety"); *In re J.R.*, No. 17-0070, 2017 WL 1735914, at *2 (Iowa Ct. App. May 3, 2017) (finding termination appropriate even though the mother secured appropriate housing two months before the adjudication hearing, stating, "We find her current living situation has not been sustained long enough to show she is able to maintain it").

Here, the mother failed to engage in substance-abuse treatment until two weeks before the termination hearing, over a year after T.A. was removed. She admitted to using methamphetamine two weeks before the termination hearing. T.A. could not be placed in her father's care at the time of the termination hearing because the father was incarcerated. There is clear and convincing evidence supporting termination of each parent's parental rights under Section 232.116(1)(h).

Both parents argue the district court improperly denied their request for an additional six months to achieve reunification. Iowa Code section 232.104(2)(b) allows the court to grant parents an additional six months when there are "specific factors, conditions, or expected behavioral changes" to cause the court

to believe there will no longer be a need for removal at the end of the six months. "[O]ur legislature has established a limited time frame for parents to demonstrate their ability to be parents." *J.E.*, 723 N.W.2d at 800. "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *C.B.*, 611 N.W.2d at 495. On our de novo review, we conclude the district court appropriately declined to extend the time for reunification for an additional six months.

The mother's recent progress after more than a year of removal, her consistently unstable housing situation, and her noncompliance with DHS recommendations regarding mental-health treatment all indicate the need for removal would still be present at the end of an additional six months.

The father argues there would be no additional harm if a six-month extension were granted, claiming his situation is similar to the situation in *In re K.M.*, where the child would experience no disruption from the district court granting an extension. No. 16-0795, 2016 WL 4379375 at *7–9 (Iowa Ct. App. Aug. 17, 2016).

The father's situation is distinguishable from *K.M.* In that case, the mother was incarcerated, but was to be released two weeks from the date of the hearing, had extensively participated in classes and programs offered by the department of corrections, had secured housing in a different community away from her prior drug use, had transportation and two jobs lined up, and had a preexisting relationship with the child. *Id.* In *K.M.,* the mother had taken concrete steps to be able to care for her child within six months. *Id.* Here, the father has not taken steps toward being able to care for his child. At the time of the termination

hearing, the father was unsure when he would be placed in a halfway house. A parent's past performance may be indicative of the quality of future care the parent is capable of providing. *See In re L.L.*, 459 N.W.2d 489, 493–94 (Iowa 1990). Here, the father has been incarcerated for most of the child's life, and he has yet to establish a period of sobriety outside of a structured setting. The father's past performance does not indicate the child could be placed with him in the next six months.

The foster parents of T.A. have stated they would adopt her, so T.A. could continue living with them. Permanency is in her best interests. The district court appropriately declined to extend the time period for reunification for both parents.

The father argues termination is not in T.A.'s best interests but does not enumerate the reasons why. The father and T.A. do not have a bond, as they have never met. T.A. has lived her entire life with her foster family, and they are willing to adopt her. Termination is in T.A.'s best interests.

The father argues he was not provided reasonable efforts because he was not given a chance to have visitation with T.A. "The concept of reasonable efforts broadly includes 'a visitation agreement designed to facilitate reunification while protecting the child from the harm responsible for the removal.'" *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) (citation omitted).

> The services required to be supplied an incarcerated parent, as with any other parent, are only those that are reasonable under the circumstances. In determining what services are reasonable under the circumstances, the department may wish to consider some or all of the following factors, among others, if applicable: the age of the child[], the bonding the child[] have or do not have with their parent, including any existing clinical or other recommendations concerning visitation, the nature of parenting deficiencies, the physical location of the child and the parent, the

limitations of the place of confinement, the services available in the prison setting, the nature of the offense, and the length of the parent's sentence. The department has an obligation to make a record concerning its consideration of this issue.

*In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000).

The father first requested visitation after he was imprisoned and consistently requested visitation thereafter. The district court ordered DHS to evaluate the appropriateness of visitation at the father's correctional facility. Here, DHS workers decided to not facilitate visitation for a variety of reasons, including "the child's age, her lack of a relationship with [the father], the physical distance between the child's placement and the prison, the limitations of the prison, and the length of [the father's] sentence." At the time the father requested visitation, T.A. was less than a year old and had no bond with the father. Additionally, visitation would involve a four-hour round-trip drive for T.A., and the prison did not have appropriate visitation facilities. As our supreme court noted in *In re L.M.*, 904 N.W.2d 835, 840 n.9 (2017), "Whether visitation for an incarcerated parent should be ordered as a reasonable effort toward reunification when timely raised by the parent will depend on the circumstances of each case." Here, we conclude the department complied with the reasonable-efforts mandate.

Further, even if DHS had provided visitation services, it would not have changed the outcome of the case, as the father was unable to care for T.A. at the time of the termination hearing because of his incarceration. *See C.B.*, 611 N.W.2d at 495 ("Moreover, the failure of the DHS to provide visitation in the last months before the termination hearing did not impact the outcome of the case.

At the time of the termination hearing, there was clear and convincing evidence the children could not be returned to the care of H.W.").

Finally, the father argues the child should have been placed in a guardianship with the paternal grandmother to avoid termination. Iowa Code section 232.116(3)(a) allows the court to forestall termination when a relative has legal custody of the child. The court's option to place the child in a guardianship and not terminate the parent's parental rights is permissive, not mandatory. *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). The burden is on the parent to establish that a factor weighing against termination should be applied. *Id.* at 476. "[A] guardianship is not a legally preferable alternative to termination." *Id.* at 477. Guardianship is not as permanent as termination and adoption. *Id.* at 478. Here, where the father has no previous relationship with the child, and it was unclear at the time of the termination hearing whether the paternal grandmother would be a suitable guardian for the child, we cannot say the district court should have placed T.A. in a guardianship to save the parent-child relationship.

**AFFIRMED ON BOTH APPEALS.**