# IN THE COURT OF APPEALS OF IOWA

No. 20-0314
Filed June 17, 2020

**IN THE INTEREST OF A.J.,**
**Minor Child,**

**T.J., Mother,**
    Appellant,

**C.J., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Romonda D. Belcher, District Associate Judge.

A mother and a father separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Britt Gagne, Gagne Law Office, Des Moines, for appellant mother.

Ryan R. Gravett of Gravett Law Firm, Clive, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Michael Sorci of Youth Law Center, Des Moines, attorney for minor child.

Karl Wolle of Juvenile Public Defender, Des Moines, guardian ad litem for minor child.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**DOYLE, Judge.**

A mother and a father separately appeal the termination of their parental rights to their child. The events leading to termination of parental rights began when the mother physically assaulted the fifteen-year-old child in November 2018. A five-year no-contact order was entered against the mother, both parents consented to the child's removal from the home, and the juvenile court adjudicated the child to be in need of assistance (CINA).

One year after the child's removal, the juvenile court noted that "very little had changed." Referencing its November 2019 permanency order, the juvenile court found in its termination order,

> [T]he mother continued to struggle with her mental health and taking accountability for her actions that led to court involvement and the removal. The mother was frequently observed to be dysregulated and hysterical and becoming very agitated and inconsolable. She was discharged from therapy in February 2019, and reengaged in therapy in April 2019. The No Contact Order continued to be in effect but allowed in-person therapeutic contact and telephone contact. The child was doing well in the current foster home and wished to be adopted, despite having had positive interactions with the father. The father intended to remain with the mother, and he lacked protective capacity . . . .

Because the child would soon be seventeen and the five-year no-contact order would remain in effect, the juvenile court ordered the State to institute termination proceedings.

At the termination hearing, both parents asked the court to establish a guardianship for the child rather than terminate their parental rights. But the juvenile court found that termination was in the child's best interests, noting the "significant trauma" the child had experienced in the parents' care and the child's wish that parental rights be terminated to allow adoption. The court terminated

both parents' rights under Iowa Code section 232.116(1)(f) and (i) (2019). On appeal, our review is de novo. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

### I. Reasonable Efforts.

First, we address the mother's claim that the State failed to make reasonable efforts to return the child to the home. *See* Iowa Code § 232.102(7) (requiring the State to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). The reasonable-efforts requirements is not a "strict substantive requirement of termination" but is "part of [the State's] ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000); *see also* Iowa Code § 232.116(1)(f)(4) (requiring proof by clear and convincing evidence that the child cannot be returned to the parent's custody). Although the Iowa Department of Human Services (DHS) must "make every reasonable effort" to return a child to the child's home "as quickly as possible consistent with the best interests of the child," *C.B.*, 611 N.W.2d at 493 (citation omitted), the DHS has to supply only those services that "are reasonable under the circumstances." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) (citation omitted).

The mother argues the DHS failed to ensure that a Court Appointed Special Advocate (CASA) was appointed as ordered in September 2019. The purpose of a CASA is "to represent the interests of a child" in judicial proceedings. Iowa Code § 232.2(9). The mother testified she requested appointment of a CASA because someone she knows who works as a CASA told her it would help, but the mother offered no further explanation of why or how a CASA would help in her case. In contrast, the DHS worker who testified at the termination hearing stated she did

not believe appointment of a CASA would have changed the outcome of the proceedings because "objectively the mother has not gained insight into the issues in this case."

The mother also complains that, despite the CINA order directing that "[v]isits with the parents shall be therapeutic and transition with therapeutic input," the DHS never provided family therapy or therapeutic visits. Again, the DHS worker testified the mother had achieved no insight from individual therapy, and that with no insight into the issues that prompted the CINA adjudication, family therapy would not be productive. Rather, she believed "that family therapy would potentially be more harmful" to the child because of the mother's history of conflict with and blaming of the child.

We agree that the State made reasonable efforts to return the child to the mother's home to the extent that those efforts were in the child's best interests. Even if the services the mother sought had been offered, the proceedings would have still led to termination of the mother's parental rights.

**II. Best Interests.**

We then turn to the mother's and the father's claim that termination conflicts with the child's best interests. *See In re D.W.*, 791 N.W.2d 703, 706-07 (Iowa 2010) (requiring that the court "apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights"). In determining best interests, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code

§ 232.116(2)). The "defining elements" we consider in making this determination are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

On our de novo review, we agree with the juvenile court that termination is in the child's best interests because of concerns for the child's safety if returned to the care of either parent:

> The child cannot be safely returned to the mother due to the No Contact Order. Even if the No Contact Order were lifted, the child could not be returned to the mother due to her unresolved mental health issues. Despite having maintained some relationship with the father, the child cannot be safely returned to the father who resides with the mother given the No Contact Order and his lack of protective capacity. The best interests of the child is the primary concern, both long-range and immediate. The child needs a long-term commitment to be appropriately nurturing, supportive for her growth and development, and that appropriately meet her physical, mental and emotional needs. The child's foster care placement is meeting these criterion and has made a long-term commitment to the child.

(Internal citations omitted.) The child was nearly seventeen years old at the time of termination and wanted both parents' rights terminated to allow adoption. *See In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019) (noting a child's custody preferences cannot be ignored in dissolution cases and applying the framework for weighing those preferences to termination cases); *cf.* Iowa Code § 232.116(3)(b) (stating the court need not terminate parental rights if the child is over the age of ten and objects to termination).

The father argues the child's best interests would be better served by establishing a guardianship rather than terminating his parental rights. For the previous reasons stated, we disagree. The child is in a pre-adoptive placement capable of meeting the child's immediate and long-term needs, and the child

requested that the court terminate parents' rights to allow adoption. Guardianship is not preferred over termination. *See A.S.*, 906 N.W.2d at 477. The child needs and wants a permanent home, and we are not persuaded to deny her one.

We affirm the termination of both the mother's and the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**