# IN THE COURT OF APPEALS OF IOWA

No. 20-0625
Filed June 17, 2020

**IN THE INTEREST OF A.F.,**
**Minor Child,**

**J.F., Father,**
 Appellant.
_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Misty White Willis, Sigourney, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., May, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MAHAN, Senior Judge.**

A father appeals the termination of his parental rights to his child, born in 2017.[1] He contends the State failed to prove the grounds for termination cited by the juvenile court, the court should have granted him additional time to work toward reunification, the department of human services failed to make reasonable efforts toward reunification, and termination was not in the child's best interests. We affirm.

## I.      *Background Facts and Proceedings*

This family came to the attention of the department of human services in November 2017, when A.F. tested positive for marijuana at birth. The family participated in services, and the department closed the case in May 2018. In August 2018, the parents tested positive for methamphetamine. There were also concerns regarding domestic violence in the home. A.F. was removed from their care in September 2018 and adjudicated in need of assistance.

An array of rehabilitative services were offered to the parents, including supervised visitation, family team meetings, safety planning, substance-abuse and mental-health treatment, transportation assistance, and drug testing. After completing a substance-abuse evaluation in December 2018, the father was recommended to participate in extended outpatient treatment. The father stated he "ha[d] issues with stopping the use of marijuana." He requested inpatient treatment but did not follow through with appointments to explore treatment

---

[1] The parental rights of child's mother were also terminated. Her petition on appeal was dismissed as untimely.

options. The parents "were cutting almost every supervised visit with [the] child short."

Both parents tested positive for methamphetamine and marijuana in March 2019. The State filed a petition to terminate their parental rights. The mother began inpatient treatment, and A.F. was returned to her care in April. The father participated in supervised visits with A.F. at the mother's treatment facility. The mother completed treatment in May, and she and A.F. moved to her father's home. Around that time, the father began inpatient treatment. He completed treatment in June, but he did not transition to a halfway program as recommended. Instead, he moved in with the mother and A.F. The department had difficulty making contact with the parents, which was especially concerning because they were living in a home with known drug users. Both parents tested positive for methamphetamine and marijuana in July 2019. The child was removed from the home[2] and placed in foster care.

The termination hearing was held over two days in October and November 2019. The record before the juvenile court indicated the child had been removed from the parents' care for more than six of the last twelve months, the parents were both residing in inpatient treatment and without other department-approved housing, and the parents' visits with the child remained fully supervised. The department caseworker and guardian ad litem recommended termination of parental rights.

---

[2] The trial return of the child to the mother's care was for 109 days.

Following the termination hearing, the court entered its order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2019). The father appealed.

## II. Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III. Discussion

The father challenges the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. We may affirm if we find clear and convincing evidence to support any of the statutory provisions. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We will focus on Iowa Code section 232.116(1)(h), which requires proof of several elements, including proof the child could not be returned to the father's custody at the present time. *See* Iowa Code § 232.116(1)(h)(4).

At the time of the termination hearing, the father was in inpatient treatment. His testimony indicated he had continued to use drugs throughout the child's life. Specifically, the father stated he did not stop using drugs after the child's initial removal in August 2018. He acknowledged his "participation in services was limited until late April 2019." He testified he was using drugs when he entered inpatient treatment in May 2019. He stayed clean "maybe a week" after he was released from treatment in June 2019. He stated he last used drugs on August

20, the day he checked into his current inpatient treatment facility. The father stated he was "supposed to graduate" in a few days, but he "asked them if he could stay a little bit longer." He planned to participate in "extreme outpatient" treatment upon his release, and he had applied for housing assistance to get an apartment. He testified the child could be returned to his care immediately, but he would "like to have some more time to get my housing figured out before we move him" because "he's already been moved so many times."

We acknowledge the father is taking steps to gain control of his life. But we cannot ignore his past. As the juvenile court observed, the father's substance abuse began at age eleven, his abuse "has been chronic," and he is "a danger to the child when under the influence of drugs." We concur in the court's finding that the father has not yet shown the ability to "break free from [his] methamphetamine-using lifestyle when [he is] not in a controlled environment," "to the detriment of the child." We also agree with the court's finding that despite services offered to the father for more than two years, "[a]ll of the original probable harms to the child still exist." We affirm the court's finding that the child could not be returned to the father's custody at the time of the termination hearing. Iowa Code section 232.116(1)(h) was satisfied.

The father next claims, "Assuming that the juvenile court was correct and the child could not be placed with [him] on the day of the termination hearing, the court erred in determining that an additional period of time would not correct the situation." The juvenile court observed:

> While patience is allowed [for] parents to remedy their deficiencies, that time must be limited because the delay may translate into intolerable hardship for the children. June and July of 2018 are the

only months of this child's young life that the [d]epartment was not involved in it. Neither parent made a serious attempt at drug treatment until the child had already been out of the home over six months and a petition to terminate parental rights was filed.

(Citations omitted.) The court further found the father's "prognos[is] indicate[s] that the child in interest will not be able to be returned to the custody of the child's parents within a reasonable period of time considering the child's age and need for a permanent home." The same issues that caused A.F. to be removed from the parents' care continue to exist. "Children should not be forced to wait for their parents to be able to care for them, particularly when we have so little evidence to rely upon to believe the circumstances will be different in six months." *In re M.M.*, No. 15-0214, 2015 WL 1332330, at *2 (Iowa Ct. App. Mar. 25, 2015). Additional time was not warranted under these circumstances.

The father also argues the State failed to make reasonable efforts toward reunification. Specifically, he claims "even with all the progress [he] made with his sobriety and mental-health treatment, the department refused to increase his visits past two hours fully supervised per week." Despite error-preservation concerns regarding the father's claim,[3] the department need only provide those services that are reasonable under the circumstances. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). At the end of first day of the termination hearing, "based upon the testimony [the court had] heard to this point," the court expressly

---

[3] The State contends the father has not preserved error on this claim, as he did not raise it to the juvenile court prior to the termination hearing. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) ("The [d]epartment has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing.").

instructed the department "to not increase the visitation with the parents from the one supervised visitation per week." Under these circumstances, we conclude the visitation offered to the father was reasonable and appropriate. *See* Iowa Code § 232.102(12) ("A child's health and safety shall be the paramount concern in making reasonable efforts.").

We further conclude termination is in this child's best interests, and no permissive statutory exception should be applied to preclude termination. We affirm the decision of the juvenile court to terminate the father's parental rights.

**AFFIRMED.**