# IN THE COURT OF APPEALS OF IOWA

No. 24-1937
Filed March 5, 2025

**IN THE INTEREST OF J.E.,**
**Minor Child,**

**J.E., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Allison C. Ackerman (until withdrawal) of Nidey Erdahl Meier & Araguas, PLC, Cedar Rapids, and Ellen Ramsey-Kacena, State Public Defender's Office, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Annette F. Martin, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Langholz and Sandy, JJ.

**SANDY, Judge.**

A mother appeals the termination of her parental rights to her son under Iowa Code section 232.116(1), paragraphs (e) and (h) (2024).[1] She argues (1) the grounds for termination were not supported by clear and convincing evidence, (2) the State did not make reasonable efforts for reunification, and (3) she should have been granted an additional six months to work towards reunification. We affirm the juvenile court.

## I.  Background Facts and Proceedings

The child was born in 2022 and was twenty months old at the time of trial. The child came to the attention of the Iowa Department of Health and Human Services (HHS) in June 2023, when he was nine months old. The mother brought the child into the hospital, reporting that he had rolled off the bed and hit a wooden floor while she was changing his diaper. He then stopped breathing and began to foam at the mouth. She also stated that he had fallen off the bed the week before but had not exhibited any of the symptoms of the latest incident. The doctors at the hospital did not believe the mother's report was consistent with the bilateral subdural hematoma and displaced frontal bone fracture they observed in the child. The child tested positive for methamphetamine and THC while at the hospital. The mother blamed her sister's admitted use of methamphetamine while around the child. Her sister later overdosed in February 2024.

---

[1] The juvenile court also terminated the rights of the father, pursuant to Iowa Code section 232.116(1), paragraphs (e) and (h) (2024). The father does not appeal the juvenile court's order.

The child was removed from the mother's care just over a week later on June 20, 2023, and a child-in-need-of-assistance (CINA) petition was filed. A week after that, the child was adjudicated as a CINA. The child has been in foster care since the removal.

Prior to her residence in Iowa, the mother resided in Nebraska. There are child abuse assessment records indicating the mother was a victim of domestic violence while her other son was present and the other son was not having his physical or medical needs met.

Following the falling incident, medical records opined that the child's injuries sustained during that incident were not accidental in nature and instead resulted from shaken baby syndrome. Those injuries have resulted in the child requiring extensive medical treatment, which have included issues with a brain bleed. He experiences several continued symptoms of shaken baby syndrome, including being almost totally deaf. He is required to wear a helmet, and the mother has repeatedly been reminded to put it on him. Despite those intense and ongoing injuries the mother testified that "[the child's] injuries are gone, basically, really, " which caused the juvenile court to express concern for her ability or willingness to "grasp the seriousness of his injuries and the long-term effects they have had on his physical health."

The mother was ordered to complete a substance abuse evaluation at the beginning of this case since the child had tested positive for methamphetamine and THC. That did not occur until November 2023, and the mother was then recommended for outpatient treatment. She did not begin treatment until February 2024. Despite being required to drug test four times per month, the

mother only completed drug testing three times through February. There was also one test in December 2023 which was dilute and untestable. All three remaining tests were positive for THC and one was positive for alcohol. The positive alcohol test followed her claim to her substance use evaluator that she had not been drinking. The petition to terminate the mother's parental rights was filed in February 2024. Following that petition the mother produced two negative drug tests.

In April the mother was arrested following an incident in a McDonald's parking lot. The police observed that she smelled strongly of alcohol at the time she was arrested, and she has admitted she was drinking. She was charged with open container, interference with official acts, and bodily injury.

The mother has struggled with her mental health throughout the case. She has been hospitalized twice following suicidal ideations. By her own admission she has ceased taking her mental health medication, claiming, "I don't feel like I need it anymore," despite no doctor suggesting she cease taking it. The mother did not have a mental health provider at the time of trial.

At one point, the mother raised the concerns of a case worker relating to the people she associates with. In November 2023, the mother "had physical indicators of being abused and that she had to get stitches as well, as a result of her injuries. [The mother] would not disclose any details to [the case worker], only that she was in a bad situation and removed herself from it."

The district court had concerns about the lack of changes the mother has made so that she can learn to safely parent the child. She has had conversations

about receiving assistance through SafeCare[2] but she testified she has not spoken to them since asking about the services she would receive if she moved to Omaha. The case social worker testified that the mother has been given the resources to find and obtain safe and stable housing but she has yet to take advantage of those resources. Currently, the mother lives in the home of a friend whose last name she does not know. She has a room in the home and "sometimes" pays rent.

The mother has not progressed beyond fully supervised visits. During visits she consistently needed to be reminded to change the child's diaper and put on his helmet. The case worker reported that there were many visits in which she was not attentive to the child. The case worker reported during the CINA case that the mother would often spend visits on video calls with other people and be focused on texting.

The termination trial was held in May 2024, and the juvenile court subsequently terminated the mother's parental rights in November. The mother now appeals.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted). "There must be clear and convincing evidence of the grounds for termination of parental rights." *Id.* Evidence is considered clear

---

[2] SafeCare is a program that promotes children's health and home safety.

and convincing when there are "no serious or substantial doubts as to the correctness of conclusions of law" relating to the evidence. *Id.* (cleaned up).

**III. Discussion**

The mother argues (1) the grounds for termination were not supported by clear and convincing evidence, (2) the State did not make reasonable efforts for reunification, and (3) she should have been granted an additional six months to work towards reunification.

*A. Grounds for Termination*

The juvenile court terminated the mother's parental rights under two different statutory grounds. "We may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

Under Iowa Code section 232.116(1)(h), grounds for termination exist if (1) the child is three years of age or younger, (2) the child has been adjudicated a child in need of assistance, (3) the child has been removed from the physical custody of her parents for six of the last twelve months, and (4) there is clear and convincing evidence that the child cannot be returned to her parents' custody as provided in Iowa Code section 232.102 at the present time. "[A]t the present time" means at the time of termination hearing. *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014).

The mother contests only the fourth statutory factor: that there is clear and convincing evidence that the child cannot be returned to her at the present time. We cannot return a child to his parent if doing so would risk exposing the child "to

any harm amounting to a new child in need of assistance adjudication." *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).

The child cannot be returned to the mother at the present time. The child is believed to have suffered from shaken baby syndrome. Regardless of whether the child was shaken or not, the mother has defied the medical consensus by sticking to her original story about how the child was injured. The mother has not made progress on the case permanency plan, does not have stable housing, and has not shown any ability to consistently care for the child's extensive medical needs.

The mother has also failed to demonstrate she has an ability or desire to take care of her own medical needs. Despite being hospitalized twice for suicidal ideations, she has not taken steps to address her mental health and has ceased taking her medication. She has failed to pass multiple drug screens and did not provide any negative tests until the termination petition was filed.

She is not consistently attentive to the child during the fully supervised visits. If the mother cannot handle unsupervised visits, she certainly cannot handle having the child returned to her at this time. Clear and convincing evidence has been presented showing the child cannot be returned to the mother at the present time.

*B. Reasonable Efforts*

Under Iowa Code section 232.102A(1)(a), reasonable efforts are "the efforts made to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home." HHS is required to

"make every reasonable effort" to return a child to his or her home "as quickly as possible consistent with the best interests of the child." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (citation omitted). What is reasonable is based on each case's circumstances. *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000).

The mother does not directly assert that HHS did not make reasonable efforts to reunite her with the child, but her grounds-for-termination argument puts forth several arguments relating to HHS's failures to assist her, such as that she "was not offered solution based casework" for several months and "no worker met with [her] for solution based casework" until April 2024. Because this argument fails on the merits, we assume, without deciding, that the mother has adequately raised this issue.

The mother told the department she did not need SafeCare classes. HHS has had many difficulties reaching the mother, and she has failed to attend scheduled solution-based-casework sessions. The mother's failure to attend services that were offered is relevant to whether HHS engaged in reasonable efforts. The mother has not dedicated herself to using HHS's resources. HHS did not fail to make reasonable efforts to reunite the mother with the child.

*C. Additional Time*

The mother does not directly argue that the juvenile court erred by failing to grant her additional time for reunification but for passing references to HHS's failure to allow her additional time. But "[sh]e did not identify any factors, conditions, or behavioral changes [s]he would make during the extension period." *In re N.J.*, No. 24-1554, 2025 WL 402045 (Iowa Ct. App. Feb. 5, 2025) (citing Iowa Code § 232.104(2)(b)). Again, the mother has not yet achieved unsupervised

visits.  She has not displayed improvement in her abilities to care for the child.  She has not made progress in addressing her own mental health.  She presents no argument as to what changes she would make in the next six months.  The district court did not err in not granting additional time towards reunification.

Accordingly, we affirm the district court's termination of the mother's parental rights.

**AFFIRMED.**