**IN THE COURT OF APPEALS OF IOWA**

No. 25-1441
Filed December 3, 2025

**IN THE INTEREST OF H.S.,**
**Minor Child,**

**B.C., MOTHER,**
        Appellant.
_____

Appeal from the Iowa District Court for Mahaska County, Patrick J. McAvan, Judge.

A mother appeals the district court's entry of a bridge modification order and its order finding reasonable efforts for reunification were made. **AFFIRMED.**

Rebecca L. Petig of Bierman & Petig, P.C., Grinnell, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Michael S. Fisher of Fisher Law Office, New Sharon, attorney and guardian ad litem for minor child.

Considered without oral argument by Greer, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

A mother appeals a bridge modification order entered in a child-in-need-of-assistance (CINA) proceeding and an order finding reasonable efforts for reunification were made. Upon our review, we affirm.

## I.      Background Facts and Proceedings

H.S. was born in 2017. The parents, who were never married, separated the following year. In 2022, the district court entered a decree awarding the parties joint legal custody of H.S, with physical care to the mother. The father was awarded visitation every other weekend.

The family came to the attention of the Iowa Department of Health and Human Services in March 2023, upon concerns of physical discipline by the mother resulting in injuries to H.S. Voluntary services were initiated, but additional injuries to the child by the mother were reported. For example, the child had a burn on his arm, a split lip, and bruises on his body. Further investigation into the matter resulted in a founded child abuse assessment. In August, H.S. was removed from the mother's custody and placed with the father subject to department supervision. The mother was ordered to have supervised visits. After a hearing in December, the court adjudicated H.S. a CINA. A dispositional order was entered in January 2024, which placed custody of H.S. with the father.

Meanwhile, the father filed a petition for modification of physical care. He then filed a motion for concurrent jurisdiction in the juvenile case, which the mother resisted. Following a review hearing in June, the court granted the father's motion for concurrent jurisdiction.

The court entered a permanency order in September. The court observed the mother was "participating in [parent-child interactive therapy (PCIT)] and has made considerable progress," but "[u]nfortunately, her progress outside of PCIT is lagging." The court noted the mother "would like more frequent visitation with less supervision," and stated, "The department, with input from the [guardian ad litem (GAL)], is encouraged to continue to evaluate the safety of [H.S.] at visits with his mother and to modify visitation if and when it is safe and appropriate to do so."

In December, the father filed a motion for bridge order to "modif[y] and transfer[] physical care of the child to [the father]" and close "this juvenile case." A permanency review hearing took place in February 2025. Following the hearing, the court entered an order finding in part:

> [The mother] was provided up to six months to participate in services to achieve the goal of reunification. As that time ends, she remains at fully supervised visits. [The mother] has not progressed past supervised visitation, and, by extension, cannot resume care of the child. Therefore, a different permanency order must be issued.

The court scheduled a permanency review hearing, "including consideration of a bridge modification order as an appropriate permanency option," to "be held concurrently with hearing on petition for termination of parental rights, if filed."[1]

The mother filed a motion for reasonable efforts, stating in part, "Despite consistently engaging in therapy and visitation, mother's visitation has not progressed." The motion also alleged "[t]ransportation issues have prevented [the] mother from being able to engage with PCIT." The court ordered the motion to be considered at the permanency review hearing.

---

[1] No termination petition was filed.

Following a hearing in August, the court entered a bridge order, granting the father sole legal custody and physical care of H.S. The court granted the mother visitation, fully supervised, every other Friday from 4:00 p.m. to 6:00 p.m. and "[o]ther visitation times as agreed to in writing by the parties." The court also entered a permanency review order, which denied the mother's motion for reasonable efforts. The mother appeals.

## II. Standard of Review

We review CINA proceedings de novo. *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021). We give weight to the district court's fact findings, but we are not bound by them. *Id.* Our primary concern is the child's best interests. *Id.*

## III. Reasonable Efforts

We turn first to the mother's challenge to the court's reasonable-efforts ruling. In this CINA proceeding, reasonable efforts are "the efforts made to . . . eliminate the need for removal of the child or make it possible for the child to safely return to the [mother]'s home." Iowa Code § 232.102A(1)(a) (2023). The reasonable-efforts mandate requires the department to make every reasonable effort to return children to their home as soon as possible consistent with the children's best interests. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "The focus is on services to improve parenting," which includes visitation. *Id.* We review the department's compliance with the reasonable-efforts mandate based on the individual circumstances of each case. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). We look at the services provided and the parent's response, not necessarily the services a parent claims the department failed to provide. *C.B.*, 611 N.W.2d at 494.

The mother maintains she "consistently engaged in services throughout the pendency of this case," but "she was denied the opportunity to progress in visitation beyond the fully supervised visits." True, the mother requested increased visitation with H.S. And the mother was participating in therapy. However, H.S.'s therapist testified the child was "still fearful with [the mother], and . . . he doesn't understand the structure and boundaries in her care." H.S. reported that the mother "freaks out" at him if he doesn't "tell her what she wants." The therapist noted that the child's "issues in school" and concerning behaviors "seemed to coincide with either anticipating visits with his mother or following visits with his mother that he would become more disregulated." The therapist opined the child's behavior had vastly improved since he had been "getting safety, structure, and security" and she didn't recommend "anything beyond supervised visitation at this point in time."

The mother also claims she "required additional assistance ensuring that PCIT happened on a regular basis due to transportation concerns and the Department failed to assist to ensure that those appointments occurred." But contrary to the mother's claim, the record reflects that transportation was not a significant impediment to her progress in PCIT. And, despite two years of department involvement, the mother continued to maintain that she had not done anything wrong to be in this situation and that she just wanted her son back. As the family support specialist reported, despite the mother's regular attendance in therapy, "[she] feels the concerns are with [the father] and not with herself," which "puts [her] in the precontemplation stage of change." The department caseworker explained:

> [The mother]'s participation in Parent-Child Interaction Therapy (PCIT) has not yielded any significant improvements. This therapy may soon conclude due to [the mother] reaching maximum benefits, primarily because she fails to implement the strategies discussed both in sessions and in her daily interactions with [H.S.] Her PCIT therapist has indicated that [the mother] consistently neglects to complete the assignments as instructed. Furthermore, [the mother] continues to assert that [the father] is abusive to [H.S.], labeling him as [H.S.]'s "true abuser."

In short, the family specialist opined that "[the mother] struggles taking responsibility for her involvement with the case which makes it difficult for her to move forward."

Upon consideration of the circumstances in this case, we agree with the court's determination that the department made reasonable efforts toward reunification.

## IV.  Bridge Modification Order

The mother also challenges the court's entry of the bridge modification order. A bridge modification order returns "jurisdiction over the child's custody, physical care, and visitation to the district court" and closes a CINA case. Iowa Code § 232.103A(1). Before the court is permitted to enter such an order, the following statutory conditions must be met:

> a. The child has been adjudicated a [CINA] in an active juvenile court case, and a permanency order is in place in that case.
> b. Legal paternity has been established for the child.
> c. The child is safely unified with a parent.
> d. The district court has issued an order concerning custody, physical care, and parenting time regarding the child and the order is in place at the time of the filing of the [CINA] petition.
> e. The juvenile court has determined that the [CINA] case can safely close when the modified district court order for custody, physical care, and parenting time is in place.
> f. Either parent has qualified for a court-appointed attorney in the juvenile case.

*Id.* § 232.103B(1)(a)–(f). Here, the mother concedes four of the conditions have been met, but she "disagrees that the child is safely unified with a parent and that the juvenile court case can safely close with entry of the bridge modification order." *See id.* § 232.103B(1)(c), (e).

The mother's claim is not supported by the record. By all accounts, H.S. is "thriving" in his current home. Specifically, regarding the safety and stability of H.S.'s relationship with the father, H.S.'s therapist opined:

> I have had the opportunity to witness interactions between [H.S.] and his father and stepmother. In those sessions, he has sought and received nurturance, regulation support, and redirection from them. He will seek out his father or stepmother and sit on their lap to be cuddled. I have not observed fear, trepidation, or anxiety as he interacts with either of them. He will smile, take their hand, and encouragingly engage them in the tasks presented in the session.
> It is my opinion that [H.S.] has thrived in his current home. He is much calmer, happier, and better in control of his feelings and behaviors. He has stated repeatedly in sessions that he loves his mother and wants to visit her, but he wants to live with his father.

In contrast, the caseworkers continued to report that the mother was fixated on the father, and she maintained that the father abused H.S. whereas she had done nothing wrong. The caseworkers further noted that because the mother refused to take accountability for her involvement in the case, the safety concerns relating to her parenting were not addressed, and she was unable to move forward and "focus on the future." At the time of the hearing, the child remained fearful of the mother. Under these circumstances, we concur with the district court's conclusion that the statutory conditions for entry of a bridge order were met.

The mother also claims the terms of the bridge modification order, which "granted [the] father primary legal custody and primary physical care subject to

fully supervised visitation with [the] mother," were not in H.S.'s best interests. Indeed, our overriding consideration in determining custody and physical care issues is the child's best interests. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007); Iowa Code § 598.41(3); *see also In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) (setting forth factors guiding the court in addition to those identified in Iowa Code section 598.41(3)).

On this question, the GAL expressed that H.S. "cannot continue to be in flux any longer waiting for his mother to come around and do what is best for him." Specifically, the GAL opined that "physical custody of [H.S.] should be placed with his father," noting the child's issues "have improved over time while in his father's care." The GAL continued:

> The entire team has stressed to [the mother] from the beginning the importance of addressing her mental health and coparenting with [the father], *for the best interests of [H.S.]* This has not happened, and [H.S.] is the one suffering. He, even more than other children, needs security and permanency in his daily life. This appears to not be possible at this point as [the mother] cannot address her own issues for the betterment of [H.S.]
> The relationship that exists between these parents sheds light on the unlikelihood that . . . the parents will never be able to coparent in any way. There is not a good solution here. However, the best solution is to have a Bridge Order entered and end juvenile court involvement. It appears that any additional time and services would be fruitless and not likely to improve the situation in any way.

Here, "[t]he only impediment to closure of the CINA proceedings is the mother's instability. The negative impact of that instability was curbed by the terms of the bridge modification order giving the father legal custody and physical care of the child[]." *See In re M.M.*, No. 24-1700, 2025 WL 273131, at *3 (Iowa Ct. App. Jan. 23, 2025); *see also In re M.A.*, No. 25-0940, 2025 WL 2539023, at *2 (Iowa Ct. App. Sept. 4, 2025) (noting "the father has provided a stable and safe home for

the child").  Following our de novo review, we concur with the court's conclusion that it is in H.S.'s best interests to grant the father sole legal custody and physical care of the child.

**V.     Conclusion**

We affirm the court's entry of a bridge modification order granting the father sole legal custody and physical care and the order finding reasonable efforts for reunification were made.

**AFFIRMED.**